

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-2004

# USA v. Bernard

Precedential or Non-Precedential: Precedential

Docket No. 03-1378

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Bernard" (2004). *2004 Decisions.* Paper 532.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/532

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 03-1378

_____

UNITED STATES OF AMERICA,

vs.

ROSE HAJAY BERNARD,

Appellant.

_____

ON APPEAL FROM THE DISTRICT COURT OF THE VIRGIN ISLANDS
(D.C. No. 01-cr-00233-2)
District Judge: The Honorable Thomas K. Moore

_____

ARGUED DECEMBER 10, 2003

BEFORE: NYGAARD, BECKER, and STAPLETON, Circuit Judges.

(Filed: June 29, 2004)

Douglas J. Beevers, Esq. (Argued)
Office of Federal Public Defender
P.O. Box 1327, 51B Kongens Gade
Charlotte Amalie
St. Thomas USVI, 00804
*Counsel for Appellant*

Anthony J. Jenkins, Esq. (Argued)
Office of United States Attorney
United States Courthouse

5500 Veterans Building, Suite 260
Charlotte Amalie
St. Thomas USVI, 00802-6924
*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

NYGAARD, <u>Circuit</u> <u>Judge.</u>

Rose Bernard pleaded guilty to possession of a false identification document under a plea agreement that dropped much more serious drug charges. She claims on appeal that the District Court erred by using the sentencing guidelines that she agreed should apply. Guided by FED. R. CRIM. P. 11(c)(1)(C), we will hold Bernard to her bargain and affirm the District Court's sentence.

I.

Rose Bernard is a Liberian citizen with permanent resident status in the United States. While going through customs at the airport in St. Thomas, U.S. Virgin Islands, she used a forged birth certificate that indicated she was born in New York, falsely declared on a customs form that she was a U.S. citizen, and attempted to take through the customs checkpoint four liquor bottles filled with more than five kilograms of liquid cocaine.

Bernard was arrested along with two co-defendants, and indicted for conspiracy to possess cocaine with intent to distribute, conspiracy to import cocaine into the United States, and four charges related to using a fraudulent birth

certificate and making a false customs declaration.

On the fourth day of her trial, near the conclusion of the government's case, she negotiated a plea agreement. Bernard agreed to plead guilty to Court Five of the indictment, possession of a false identification document in violation of 18 U.S.C. § 1028(a)(4), (b)(1)(A)(ii) and (b)(3)(A), and in exchange, the government dropped all other charges. Bernard also explicitly agreed to the sentencing enhancement contained in 18 U.S.C. § 1028(b)(3)(A), which is applicable when the offense is committed to facilitate a drug trafficking crime. She also agreed to be sentenced under the guidelines that were applicable to the dismissed drug charges.

Applying the drug-related enhancement under § 1028(b)(3)(A) increased Bernard's maximum sentence from 15 years to 20 years.[1] Bernard was ultimately sentenced to 46 months in prison, a sentence at the bottom of the 46-to-57-month range recommended by the sentencing guidelines applicable under the plea agreement.

---

[1]Bernard incorrectly states in her brief that the effect of the enhancement was to change the maximum sentence from *1 year* to 20. As the government points out, that is clearly not the case, since 18 U.S.C. § 1028(b)(1)(A)(ii) provides for a 15-year maximum sentence for possession of a forged birth certificate.

Bernard now contends that the District Court erred by applying U.S.S.G. § 2D1.1, a guideline for drug offenses, in sentencing her for possession of a false identification document. The District Court applied that guideline using the cross-reference in § 2L2.2(c), which directs that if the "defendant used a passport or visa in the commission or attempted commission of a felony offense" the Court should apply § 2X1.1, which in turn directs the Court to use the guidelines for the underlying felony offense. In Bernard's case, the underlying offense was drug trafficking, the sentencing guidelines for which are found in § 2D1.1.

Bernard argues that because she used only a fraudulent birth certificate, and not a "passport or visa" as required by § 2L2.2(c), the District Court erred by applying this cross-reference. She also contends that because the stipulation she made in her plea agreement did not specifically state that she had committed a drug offense, it was insufficient to support the guidelines for drug offenses.

We exercise plenary review over the question of whether the terms of a plea agreement have been violated. *United States v. Rivera,* 357 F.3d 290, 294 (3d Cir. 2004). We also exercise plenary review over the interpretation of the sentencing guidelines. *United States v. McKenzie,* 193 F.3d 740, 742 (3d Cir. 1999). We review for plain error, however, when a defendant did not object to a purported error before the sentencing court. *United States v. Couch,* 291 F.3d 251, 252-53 (3d Cir. 2002). To establish

plain error, a defendant must prove that 1) the court erred; 2) the error was obvious under the law at the time of review; and 3) the error affected the defendant's substantial rights. *Johnson v. United States,* 520 U.S. 461, 467 (1997). If these conditions are met, then we may exercise our discretion to notice the error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks and citations omitted) (alteration in original). Because we conclude that the District Court did not err, we do not reach the other prongs of the *Johnson* plain error test.

## II.

We need not, and do not, decide whether the District Court would have erred had it applied the cross-reference under U.S.S.G. § 2L2.2(c) without the plea agreement. That is not the issue here. In the context of this case, the government and the defense stipulated in the plea agreement that the cross-reference should apply. The sole issue before us on appeal is whether the District Court had the authority to accept this plea agreement, which stipulates to a factor or sentence that falls outside the sentencing guidelines range, and absent the agreement, would not apply.

Bernard entered her guilty plea mid-trial, after the government had nearly concluded its case against her and presented, by her attorney's own admission, "very strong evidence" that Bernard had been involved in a drug conspiracy. S.A. at 29. In exchange for Bernard's agreement to certain sentencing stipulations, the government's attorney agreed to drop the charges of drug importation and trafficking, by far the most serious charges in the indictment. It is clear from the record that the government would not have accepted the plea without these sentencing stipulations.

The record of the plea hearing demonstrates that Bernard's attorney was well aware of the "error" about which he now complains. In fact, he raised the issue before the Court, but when the government's attorney threatened to remove the plea offer, he explicitly stipulated to the application of § 2L2.2(c). As the record indicates, this stipulation was thoroughly discussed, and specifically agreed to by Bernard.

**Mr. Jenkins:** [Deputy U.S. Attorney]: And just to further clarify, the cross-reference referred to in the plea agreement is United States Sentencing Guidelines 2L2.2(c), where it speaks of a cross reference. . . .

**The Court:** Alright. Do you agree, Mr. Beevers?

**Mr. Beevers** [Bernard's Attorney]: Almost. My position is it would be for the Court to determine, since the Guidelines don't

expressly say a birth certificate, the guidelines would only go up after Attorney Jenkins would make a motion for upward departure to invoke that rule.

And I would concede that he has very strong evidence at this point that the higher enhancement – but that would ultimately be your decision, whether to enhance.

**Mr. Jenkins:** No, no, that's not the deal. The deal is that you're going to stipulate that as pursuant to 2L2.2 . . . or we don't have a plea agreement . . .We're not going to argue about that. That's going to be a stipulation.

**Mr. Beevers**: In that case, we are stipulating that the higher Guideline would apply, and –

**The Court:** What's the net effect?

**Mr. Beevers:** The net effect would be that it would be, sentencing would be as – under the Guidelines for drug trafficking offense . . . . [T]he Guidelines would be the same if she had directly pled to the drug trafficking offense. That's our understanding . . . [a]nd I'll waive any argument that a specific motion would be required if you, if you need it, or I'll actually make the motion, if you need it.

**The Court:** Well, you're stipulating to it, as I understand.

**Mr. Beevers:** Right.

**The Court:** Do you understand all that, Ms. Bernard, the net effect of what that is? (Defendant conferring with counsel.)

**Defendant Bernard:** Yes, sir.

**The Court:** In essence, it's what you initialed on Paragraph 8 on the plea application, although you're not pleading to a . . . drug trafficking offense, the

sentencing can be calculated in accordance, as if you had. Do you understand that?

**Defendant Bernard:** Yes, sir.

S.A. 29-31.

On this record, there is no reason to doubt that the agreement to apply the § 2L2.2(c) cross-reference was a tactical decision that was designed to, and in fact did, benefit Bernard significantly. As a result of the agreement, the government dropped two drug charges that would have each carried mandatory minimum sentences of five years, in exchange for a plea to a far less serious crime without a mandatory minimum sentence.[2]

Bernard incorrectly characterizes the issue in this case as a "failure to object to the pre-sentence report" and argues that she "was not trying to receive an unlawfully high sentence." Appellant's Reply Br. at 8. What Bernard was trying to do is clear – reach a compromise that would result in a lower sentence than if she were convicted on all counts, would reflect a less-serious conviction on her criminal history, and would leave open the possibility of avoiding deportation.[3] In

exchange for these benefits, and as part of the plea agreement, she stipulated to the applicability of U.S.S.G. § 2L2.2(c). To now ignore that stipulation and not apply § 2L2.2(c) would contravene the clear intent of both parties in entering into the plea agreement.

III.

Having concluded that the agreement that § 2L2.2(c) would be applied is binding, we must determine whether the District Court could use the stipulated guideline for sentencing.

Federal Rule of Criminal Procedure 11 regulates plea agreements, and establishes that in return for a guilty plea, a government attorney may agree to dismiss other charges, make sentencing recommendations, or "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply."

---

[2]It is worth noting that Bernard was ultimately sentenced to fewer than five years.

[3]During the sentencing hearing, Bernard's attorney emphasized the importance of the immigration

consequences of the conviction to his client. He explained that she had not lived in her native Liberia since she was five years old, and that the prospect of avoiding deportation was the motivating force behind the structure of the plea agreement. In fact, because of the fear of deportation, Bernard had halted her initial cooperation with police, and therefore forfeited the possibility of a significant downward departure for providing substantial assistance to the prosecution. S.A. at 59-60.

FED. R. CRIM. P. 11(c)(1)(C).[4] The rule further provides that "such a recommendation or request binds the court once the court accepts the plea agreement." *Id.*[5] If the District Court does not accept the sentencing agreement, then under Rule 11(c)(5)(B), the defendant must be allowed to withdraw her guilty plea.

This Rule disposes of the case,[6] requiring us to hold that a sentencing court has the authority to accept a plea agreement stipulating to a sentencing factor or a provision of the sentencing guidelines that otherwise would not apply, or specifying a sentence that falls outside the applicable guidelines range. Once the District Court has accepted such an agreement, it is binding.

This issue does not often come up on appellate review, apparently because the parties are unlikely to appeal the consequences of a plea agreement to which they both consented, and because the law restricts appeals from agreed-upon

---

[4]This version of Rule 11, amended in 1999, was applicable at the time of Bernard's plea and sentence.

[5]Rule 11(c)(1) contemplates three possible types of plea agreements, two of which – found in subsections (B) and (C) – involve an agreement with respect to the applicability of a particular provision of the sentencing guidelines. It is clear that the government and Bernard entered into a Rule 11(c)(1)(C), as opposed to Rule 11(c)(1)(B), plea agreement. Under Rule 11(c)(1)(B), a government attorney may "recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." *Id.* However, unlike a Rule 11(c)(1)(C) agreement, a Rule 11(c)(1)(B) agreement "does not bind the court." FED. R. CRIM. P. 11(c)(1)(B).

The record makes clear that the parties did not agree that the government would merely recommend application of the cross-reference provision in U.S.S.G. § 2L2.2(c) under FED. R. CRIM. P. 11(c)(1)(B), but instead, as noted above, agreed to enter into a binding agreement whereby Bernard would be sentenced under the cross-reference provision.

Accordingly, we write in the context of a Rule 11(c)(1)(C) plea agreement, which, as we have noted, is binding upon a District Court once accepted.

[6]Even prior to the current amendment to Rule 11, we had interpreted Rule 11 to allow plea agreements that bargain for departures from the sentencing guidelines. *United States v. Gilchrist*, 130 F.3d 1131, 1134 (3d Cir. 1997). In *Gilchrist,* we established that once the District Court accepts a plea that is conditioned upon an agreement on sentence, that plea agreement "binds the district court notwithstanding departures from the applicable guidelines." *Id.* at 1134.

sentences. *See* 18 U.S.C. § 3742(c). The best discussion of the issue is found in *United States v. Goodall,* 236 F.3d 700, 703-05 (D.C. Cir. 2001). We agree with the *Goodall* Court's conclusion that Rule 11 "plainly countenances agreed-upon sentences falling outside of the otherwise applicable Guidelines range." *Goodall,* 236 F.3d at 705. In allowing the parties to agree on a specific sentence, or that particular provisions of the guidelines do or do not apply, the Rule clearly contemplates agreements on sentences that could not be reached by directly applying the guidelines. FED R. CRIM. P. 11(c)(1)(C). The Rule further provides that once a plea agreement with a sentencing stipulation is reached between the parties and accepted by the Court, it must be enforced at sentencing. *Id.*

We also agree with the conclusion of Judge Randolph, concurring in *Goodall.* Judge Randolph noted that this portion of Rule 11 seems to be in tension with provisions that make the sentencing guidelines binding on the federal courts. *See Goodall,* 236 F.3d at 706 (Randolph, J. concurring). In particular, the federal sentencing statute provides that a sentencing court *"shall* impose a sentence of the kind, and within the range [set by the sentencing guidelines] *unless* the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from the one described." 18 U.S.C. § 3553(b) (emphasis added). The policy

statements that accompany the sentencing guidelines restate this rule, directing that a court may only accept a plea agreement mandating a particular sentence if the agreed sentence "is within the applicable guideline range" or it "departs from the applicable guideline range for justifiable reasons." U.S.S.G. § 6B1.2(c). Thus, there is no doubt that "the Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases." *Stinson v. United States,* 508 U.S. 36, 42 (1993) (quoting *Mistretta v. United States,* 488 U.S. 361, 391 (1989)).

Because Rule 11 and the sentencing guidelines present such a conflict, we must decide which of them will prevail. *See Goodall,* 236 F.3d at 706-08 (Randolph, J., concurring) (providing a thorough discussion of this conflict). The supersession clause applicable to Rule 11 furnishes the answer, directing that "laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b). The relevant portion of Rule 11(c) was added in 1999, after the last substantive change to the relevant language in 18 U.S.C. § 3553. As a result, we conclude, as did Judge Randolph in *Goodall,* that the provisions of Rule 11(c) take precedence, and that a sentencing court may accept plea agreements in which the parties stipulate to sentences, or sentencing factors, that would otherwise contravene the sentencing guidelines. *Goodall,* 236 F.3d at 708 (Randolph, J., concurring).

It is axiomatic under Rule 11 that

once a court accepts such an agreement, it must be enforced at sentencing. Therefore, we will affirm the District Court's application of the U.S.S.G. § 2L2.2(c) cross-reference to Bernard's sentence. Regardless of whether the cross-reference would have been properly applied in the absence of the plea agreement, the District Court was under an obligation to apply the provision after accepting the terms of Bernard's plea. To hold otherwise would be inequitable because it would allow Bernard to get the benefits of her plea bargain, while evading the costs. Moreover,"[p]lea agreements are contractual and therefore are to be analyzed under contract law standards," *Gilchrist,* 130 F.3d at 1134, and contract law would not support such a result.[7]

---

[7]We note that even if we agreed with Bernard's argument, we could not grant the relief she requests. If the provisions of a plea agreement are accepted by a court, but later found to be invalid, the proper remedy is not to impose a sentence in violation of the plea agreement, but to allow the defendant to withdraw the guilty plea and either negotiate a new agreement, or proceed to trial. *See United States v. Barnes,* 83 F.3d 934, 941 (7th Cir. 1996) ("If we rule that some provision of the plea agreement is invalid, we must discard the entire agreement and require [the defendant] and the government to begin their bargaining over again."); *Mukai,* 26 F.3d at 956 ("[I]f the court later finds the disposition in the plea agreement objectionable it should not reduce the

## IV.

Finally, Bernard contends that the District Court violated an additional sentencing guidelines provision addressing circumstances under which a court may utilize, pursuant to a plea agreement, a sentencing guideline other than the one applicable to the offense of conviction. The sentencing guidelines "describe a nine-step process by which to arrive at a sentencing range." *Watterson v. United States,* 219 F.3d 232, 235 (3d Cir. 2000). Under the first step of that process, according to U.S.S.G. § 1B1.1(a), the District Court "first selects the offense guideline section applicable to the offense of conviction." *Watterson,* 219 F.3d at 235. In doing so, the guidelines instruct a district court to

> [d]etermine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction *(i.e.,* the offense conduct charged in the count of the indictment or information of which the defendant was convicted).

---

sentence unilaterally in such cases, but rather should withdraw its acceptance of the plea agreement") (internal quotation marks and citation omitted); *see also Gilchrist,* 130 F.3d at 1134 (holding that if a plea agreement is breached, the district court may either grant specific performance or allow the defendant to withdraw the plea).

However, in the case of a plea agreement (written or made orally on the record) containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two applicable to the stipulated offense.

U.S.S.G. § 1B1.2(a).

Ordinarily, under U.S.S.G. § 1B1.2(a), a defendant is to be sentenced according to the guideline "applicable to the offense of the conviction," *id.,* which in this case would be, *inter alia,* U.S.S.G. § 2L2.2. However, "[i]n a case in which the elements of an offense more serious than the offense of conviction are established by a plea agreement," U.S.S.G. § 1B1.2(a) provides a "limited exception" to that rule, and requires that "the guideline section applicable to the stipulated offense is to be used." U.S.S.G. § 1B1.2, app. note 1.

While U.S.S.G. § 2L2.2 applies to Bernard because of her conviction under 18 U.S.C. § 1028, she argues that the cross-reference in this provision, requiring the District Court to apply, in this case, the drug trafficking guideline found at U.S.S.G. § 2D1.1, did not apply because U.S.S.G. § 2L2.2(c)'s "passport or visa" requirement was not met. Therefore, she contends, the District Court could only have applied the drug trafficking guideline by way of the limited exception found in

U.S.S.G. § 1B1.2(a).[8] She then argues

---

[8]Bernard actually cites to U.S.S.G. § 1B1.2(c), which contains language similar to § 1B1.2(a) but applies to situations where a defendant has "stipulat[ed] to the commission of *additional* offense(s)." U.S.S.G. § 1B1.2, app. note 3 (emphasis added). As Application Note 3 to U.S.S.G. § 1B1.2 explains, however, U.S.S.G. § 1B1.2(c) applies to situations where the defendant has stipulated to facts that establish the commission of additional offenses, and requires that under such circumstances

the guidelines are to be applied as if the defendant had been convicted of an additional count for each of the offenses stipulated. For example, if the defendant is convicted of one count of robbery but, as part of a plea agreement, admits to having committed two additional robberies, the guidelines are to be applied as if the defendant had been convicted of three counts of robbery.

U.S. S .G. § 1B1.2, app. note 3. No "additional" offenses of conviction are at issue in this case *(e.g.,* an additional instance of possession of a fraudulent document). Instead, Bernard's argument is based upon U.S.S.G. § 1B1.2(a), which provides for imposition of a guideline other than the one applicable to the offense of conviction where "the elements of an offense [such as drug

9

that this exception would not apply to her because she did not stipulate to any facts that would establish the elements of any offense for which the drug trafficking guideline, U.S.S.G. § 2D1.1, would apply. *See* U.S.S.G. § 1B1.2, app. note 1 (explaining that U.S.S.G. § 1B1.2(a) applies "[i]n a case in which the *elements* of an offense more serious than the offense of conviction are established by a plea agreement") (emphasis added); *Braxton v. United States,* 500 U.S. 344, 349-50 (1991) (applying an earlier version of U.S.S.G. § 1B1.2 and looking to see whether a defendant had stipulated to facts that "specifically established" the elements of the offense the District Court sought to sentence the defendant under); *see also United States v. Nathan,* 188 F.3d 190, 201 (3d Cir. 1999) ("the text of section 1B1.2(a) . . . indicates that a statement is a 'stipulation' only if:  (i) it is part of a defendant's written plea agreement; (ii) it is explicitly annexed thereto; or (iii) both the government and the defendant explicitly agree at a factual basis hearing that the facts being put on the record are stipulations that might subject a defendant to the provisions of section 1B1.2(a)").

As indicated above, we have not addressed the "passport or visa" argument because of our holding that a FED. R.

CRIM. P. 11(c)(1)(C) agreement indicating that a specific sentencing guideline does or does not apply is, once accepted, binding upon the District Court.  For the same reason, we have no occasion to address whether Bernard's plea agreement is sufficiently specific to warrant a sentence under U.S.S.G. § 1B1.2(a) based on a guideline other than the one applicable to the offense of conviction.  It necessarily follows from our conclusion in Section III that, under FED. R. CRIM. P. 11(c)(1)(C), Bernard's agreement to be sentenced under the cross-reference provision of U.S.S.G. § 2L2.2(c) is alone sufficient to validate her sentence.

V.

In sum and for the reasons detailed above, we will affirm the judgment.

_____

---

trafficking] more serious than the offense of conviction [such as possession of a false identification document] are established by a plea agreement." U.S.S.G. § 1B1.2, app. note 1.