**UNITED STATES of America,
Plaintiff,**

**v.**

**Speroula FOTIADES–ALEXANDER,
Defendant.**

**No. CIV.A. 03–0708.**

United States District Court,
E.D. Pennsylvania.

Aug. 12, 2004.

Anthony F. List, List & List P.C., Media, PA, for Speroula Fotiades–Alexander, Defendant.

Floyd J. Miller, United States Attorney's Office, Philadelphia, PA, for U.S., Plaintiff.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

### I.  BACKGROUND

The United States Department of Veteran's Affairs (VA) is authorized to appoint a fiduciary to manage the affairs of a veteran when it appears that such appointment would serve the best interests of the veteran. In January 1993, the defendant, Speroula Fotiades–Alexander, a lawyer licensed

to practice in Pennsylvania, was appointed as a commissioned fiduciary for the VA. After being appointed to this position, it is alleged that the defendant, beginning on or about March 29, 1993 through on or about April 5, 2004, stole or attempted to steal money from the disabled veterans for whom she had been appointed as a federal fiduciary.

The defendant was indicted on nineteen counts of knowingly receiving, concealing, and retaining stolen property of the United States, in violation of 18 U.S.C. § 641, occurring from October 26, 1998, through December 27, 2000. On April 28, 2004, the defendant pleaded guilty to all the counts alleged in the indictment. On June 24, 2004, after the defendant pleaded guilty but before the sentencing, the Supreme Court decided *Blakely v. Washington,* ——— U.S. ———, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

The Pre-sentence Investigation Report ("PSI"), prepared by the Probation Office, recommended an offense level of 15,[1] a criminal history category of I, and a guideline range of eighteen to twenty-four months of imprisonment. The defendant argues that, pursuant to *Blakely,* the facts relied on by the Probation Office in assessing her offense level cannot be considered for sentencing purposes without violating the Sixth Amendment. Specifically, she objects to 1) an eight-level increase to her offense level, pursuant to U.S.S.G. 2B1.1(b)(1)(C), for an amount of loss greater than $70,000, but less than $120,000, 2) a two-level victim related increase to the offense level, pursuant to

U.S.S.G. 3A1.1, because the defendant knew or should have known that the victim was vulnerable, and 3) a two-level increase, pursuant to U.S.S.G. 3B1.3, for abuse of a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense.

## II. THE APPLICABILITY OF BLAKELY

In *Blakely,* ——— U.S. ———, 124 S.Ct. 2531, 159 L.Ed.2d 403, the United States Supreme Court reversed a sentence imposed by a Washington state judge that was based on a finding by the judge that the defendant acted with deliberate cruelty, despite the fact that deliberate cruelty was not alleged, found by a jury, or admitted to by the defendant. The Supreme Court stated that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2543, *quoting Apprendi v. N.J.,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Although, according to some courts, *Blakely* puts into question the constitutionality of at least some aspects of the federal sentencing guidelines analogous to the Washington state sentencing scheme, *Blakely* did not hold that the federal sentencing guidelines are unconstitutional. *Blakely,* 124 S.Ct. at 2538, n. 9; *see U.S. v. Pineiro,* 377 F.3d 464 (5th Cir.2004); *U.S. v. Booker,* 375 F.3d 508 (7th Cir.2004) (Easterbrook, J. dissenting); *but see U.S. v. Booker,* 375 F.3d 508 (7th Cir.2004).[2]

---

**1.** The offense level of fifteen resulted from a base offense level of six, increased by eight levels because the loss exceeded $70,000 but was less than $120,000, increased by two levels because the defendant knew or should have known that a victim was a vulnerable victim, increased by two levels because the defendant abused a position of trust, and reduced by three levels for acceptance of re-

sponsibility and prompt notice to the Government of intent to enter a plea of guilty.

**2.** The Supreme Court has agreed to hear argument in *U.S. v. Booker,* 375 F.3d 508, and *U.S. v. Fanfan,* Doc. no. 03–47–P–H (D.Me.), No. 04–1946 (1st Cir. July 16, 2004), in the Fall 2004 session and hopefully will clarify the extent and scope of *Blakely.*

█] While the defendant objects to the use of three separate facts that the Probation Office used to calculate her offense level, even if *Blakely* were to apply to the federal sentencing guidelines, she overlooks that she admitted to these facts during the plea colloquy. One of the holdings of *Blakely* was that, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely,* 124 S.Ct. at 2546, (emphasis in original). Therefore, a defendant who, at the plea hearing, agrees that the Government's recitation of the facts (or set of facts) that serves as the basis for the plea accurately and correctly summarizes the facts of the case against her, admits to these facts (or set of facts), and the court may enhance the defendant's sentence under the federal sentencing guidelines based on these admitted facts. *Id.*

█ Each of the facts (or set of facts) relied upon by the Probation Office to increase the offense level to which Fotiades–Alexander objects were proffered by the Government at the plea hearing to show there was a factual basis for the plea.

First, as to the issue of whether she admitted to the amount of the loss, the PSI recommended an eight-level increase of the offense level, pursuant to 2B1.1(b)(1)(C), for an amount of loss of greater than $70,000, but less than $120,000. At the plea hearing, the Government stated that, should the case proceed to trial, it would offer evidence to show that there was an approximate loss of $125,057.81 (i.e., a $40,349.56 loss to

veteran MC, a $17,630.00 loss to veteran BM, a $19,550.00 loss to veteran SE, and a $47,528.25 loss to veteran TR). Tr. at 13. The Government further stated that it "would offer evidence which would prove that for purposes of the defendant's relevant conduct, the total amount of the checks, loss rather to the Government as a result of the defendant's conduct was $159.779.24." Tr. at 13–14.[3]

Second, as to whether she admitted to whether she knew or should have known that the victim was vulnerable, the PSI recommended a two-level victim related offense increase, pursuant to 3A1.1, because the defendant knew or should have known that the victim was vulnerable. During the plea colloquy, the Government stated that "individuals such as attorneys, and in this case the defendant, are chosen to manage and oversee the financial affairs of veterans who were either physically disabled or mentally disabled." Tr. at 11–12. Many of these veterans had died at the time that these checks were written. Id.

Third, as to the issue of whether she admitted that she abused a position of trust, the PSI recommended a two-level increase, pursuant to 3B1.3, for abuse of a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense. The Government stated that the defendant had written a number of checks on the accounts of veterans for whom she served as the federal fiduciary. Tr. 12–13.

At the conclusion of the Government's proffer of the facts that formed the basis of the plea, the following exchange be-

**3.** Although the defendant contends that "[a]t the April 21st change of plea hearing, the defendant expressed concerns over the discrepancies in dollar amount and the impression was the amount would be resolved at the sentencing hearing," the change of plea hearing was re-scheduled for April 28, 2004. At the change of plea hearing on April 28, the Government made a statement of the factual basis for the plea, including the relevant amount of loss, and the defendant agreed that the Government's summary of the facts of the case against her was correct and accurate.

tween the court and the defendant occurred:

> THE COURT: Ms. Fotiades, you've heard the Assistant United States Attorney summarize the facts of the case against you. Do you agree that he has accurately and correctly summarized those facts?
>
> MS. FOTIADES–ALEXANDER: Yes, sir.

Tr. at 14.[4]

Because she agreed to the accuracy and correctness of the facts (or set of facts) at the change of plea hearing, even if *Blakely* applies to the federal sentencing guidelines, it would not apply to the use of these admitted facts (or set of facts) to increase the offense level.

First, by agreeing to the facts (or set of facts), the defendant admitted that the amount of loss was approximately $125,057.81 by the individual veterans and approximately $159,779.24 by the government.

Second, she also admitted she was chosen as a member of the VA's Commission Fiduciary Program to manage and oversee the financial affairs of veterans who were either physically disabled or mentally disabled and that she wrote checks on the accounts of veterans for whom she served as the federal fiduciary. This serves as an admission of the vulnerability of the victims, who were physically or mentally handicapped or deceased. Pursuant to the Sentencing Guidelines, the unusually vulnerable victim enhancement applies when a defendant knew or should have known of the victims vulnerability. To demonstrate when this enhancement applies, the guidelines provide the example of "a robbery

case in which the defendant selected a handicapped victim." Application note 2.

Third, by admitting to being a fiduciary, by definition, she admitted that she stood in a special position of trust. Blacks Law Dictionary (6th Ed.1990) defines fiduciary as "the term derived from the Roman law, and means (as a noun) a person holding the character of trustee, or a character analogous to that of a trustee, in respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires." American Heritage Dictionary (4th Ed.2000) defines fiduciary as "one, such as an agent of a principal or a company director, that stands in a special relation of trust, confidence, or responsibility in certain obligations to others." This is also supported by the application notes for this enhancement. Application note 1 of the federal sentencing guidelines states that, "[t]his adjustment, for example, applies to the case of an embezzlement of a client's funds by an attorney serving as a guardian." Application note 2 states that special skill refers to a skill not possessed by members of the general public ... examples would include ... lawyers." Application note 4 provides additional examples of when this enhancement applies, and includes theft or embezzlement from an employee pension plan or welfare benefit plan when the defendant was a fiduciary of the benefit plan.

■ As a final matter, the defendant argues that, even assuming she admitted to the underlying facts (or set of facts), because she did not make a "knowing and intelligent waiver of her *Blakely* rights," Defendant's Response to Government's

---

4. Alexander–Fotiades also agreed that the potential maximum sentence is 190 years, reflecting 19 counts, each carrying a maximum of ten years imprisonment. Tr. at 14–15. The defendant also stated that she understood that by pleading guilty she was giving up the

right to a further trial of any kind and the court would enter "a judgement of guilty and sentence [her] on the basis of the guilty plea and in accordance with the sentencing guidelines after considering the presentence report." Tr. at 10.

Supplemental Sentencing Memorandum at 6–7 (doc. no. 26), the admitted facts may not be relied upon by the court to increase her offense level. This argument conflates any infirmity which may have attached to her plea if not intelligently and knowingly made with the issue of what facts the court may rely upon to increase the defendant's offense level. To put it another way, the defendant's argument about whether she voluntarily and intelligently "waived" her *Blakely* rights relates to the validity of her guilty plea rather than to the court's reliance on the facts admitted by the defendant to increase her offense level.[5]

Pursuant to Fed.R.Crim.P. 11, after a guilty plea is accepted by the court, the plea may be withdrawn if "the defendant can show a fair and just reason for requesting the withdrawal." Fed.R.Crim.P. 11(d)(2)(B). The Third Circuit has held that, "at a minimum, the motion to withdraw [a guilty plea] should be granted if the plea was not made voluntarily and intelligently." *U.S. v. Nahodil*, 36 F.3d 323, 330 (3d Cir.1994), *citing* 8A James Wm. Moore, et al., Moores Fed. Practice P 32.09[1]. At 32–89 (1994). Similarly, when a court has determined that an aspect of a plea agreement is invalid, the proper remedy is "to allow a defendant to withdraw the guilty plea and either negotiate a new agreement or proceed to trial." *U.S. v. Bernard*, 373 F.3d 339, n. 7 (3d Cir.2004). However, while contending that there was no waiver of her "*Blakely* rights," in response to the court's question about withdrawing the guilty plea, defense counsel stated on the record that the defendant does not seek to withdraw her plea. Because her waiver claim relates to the validity of the guilty plea rather than to the use of admitted facts to increase the offense level, and the defendant does not wish to withdraw the plea she entered, the argument that she did not properly "waive" her *Blakely* rights is not relevant to the imposition of a sentence under the sentencing guidelines.

## III. CONCLUSION

For the foregoing reasons, the offense level of fifteen is properly calculated based on the sentencing factors enumerated in the PSI. With a criminal history category I, the guideline range for incarceration is eighteen to twenty-four months. An appropriate order follows.

### ORDER

AND NOW, this 12th day of AUGUST, 2004, it is hereby ORDERED that the defendant's objections to paragraphs 18, 19, and 20 are OVERRULED.

AND IT IS SO ORDERED.

---

**5.** It is worth noting that the defendant also agreed during the plea colloquy that she was giving up the right of a further trial of any kind and that she would be sentenced in accordance with the sentencing guidelines. Tr. at 10.