UNITED STATES of America, Plaintiff,

v.

Candace Marie TOOZE, Cecilia Leslee Herzberg, Defendants.

No. CR–06–0527–PHX–DGC.

United States District Court,
D. Arizona.

June 14, 2006.

James Sun Park, Park Law Office PLC, Robert James McWhirter, Federal Public Defender's Office, Phoenix, AZ, for Defendants.

Kurt Michael Altman, U.S. Attorney's Office, Phoenix, AZ, for Plaintiff.

### ORDER

CAMPBELL, District Judge.

Magistrate Judge Lawrence Anderson has ordered that Defendants Candace Tooze and Cecilia Herzberg be released upon posting secured bonds of $100,000 each. The government has appealed Judge Anderson's release decision. The appeal raises a question of first impression: whether the recently-enacted time and waiver provisions of Federal Rule of Criminal Procedure 59(a) govern the appeal rights provided in 18 U.S.C. § 3145. If they do, the government has waived its right to appeal. The Court must then decide whether it possesses and should exercise discretion to review Judge Anderson's order.

The Court concludes that the government has waived its right to appeal. The Court also concludes, however, that it should exercise its discretion and reverse the magistrate judge's order releasing Defendants.

### I. Background.

Sisters Candace Tooze and Cecilia Herzberg are charged with bank robbery and conspiracy to commit bank robbery. Doc. # 29. At a detention hearing on April 27, 2006, Judge Anderson found that the government had failed to meet its burden of proving that Defendants were dangers to the community or serious flight risks. Doc. # 35 at 55–56. Judge Anderson ordered that Defendants be released upon posting secured bonds of $100,000 each. *Id.* at 56. On May 11, 2006, Defendants filed a joint motion to reduce the bond amount. Doc. # 14. Judge Anderson denied this request, stating that Defendants posed a sufficient flight risk to justify a substantial bond requirement. Doc. # 17 at 6.

The fiancé of the Defendants' mother subsequently agreed to pledge his house as security for Defendant Tooze's bond. A hearing concerning the sufficiency of the bond and other conditions of release was held on May 24, 2006. Judge Anderson found the bond requirement satisfied and ordered Ms. Tooze released. Doc. # 36. The government objected and requested a stay. Judge Anderson denied the stay, concluding that the government had waived its right to appeal because no objections were filed within 10 days of the April detention hearing as required by Rule 59(a). *Id.* at 5–7.

The government filed a notice of appeal and request for stay the same day. Doc. # 18. District Judge Earl H. Carroll granted the stay. On May 31, 2006, the Court heard oral argument on the government's appeal and Defendant Herzberg's motion to reduce bond.

### II. Rule 59(a) Applies to the Government's Appeal.

■ Rule 59(a), provides:

A district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense. The magistrate judge must promptly conduct the required proceedings and, when appropriate, enter on the record an oral or written order stating the determination. A party may serve and file objections to the order within 10 days after being served with a copy of a written order or after the oral order is made on the record, or at some other time the court sets. The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous. Failure to object in accordance with this rule waives a party's right to review.

The government argues that the rule does not apply to this appeal because the question of Defendants' detention was not specifically "referred" to Judge Anderson by a district judge. Local Rule of Criminal Procedure 57.6(d)(3) provides, however, that magistrate judges shall "[c]onduct all detention hearings and hearings to amend, modify or revoke conditions of release under the Bail Reform Act of 1984 . . . ." This local rule has been promulgated by the district judges to clearly

assign pre-trial detention hearings to magistrate judges. The Court concludes that the local rule constitutes a referral of detention matters to magistrate judges within the meaning of Rule 59(a).

Rule 59(a) was designed to "enhance the ability of a district court to review a magistrate judge's decision or recommendation by requiring a party to promptly file an objection to that part of the decision or recommendation at issue." Rule 59 Advisory Committee Notes (2005 Adoption). The Court can identify no principled basis for concluding that Rule 59(a) applies only to matters referred to magistrates by orders in individual cases and not to matters referred by local rule. The uniform standards established by Rule 59(a) are beneficial in all non-dispositive matters, whether referred by local rule or individual order.

■ During the hearing on April 27, 2006, Judge Anderson stated on the record that the government had failed to carry its burden of proving that Defendant Tooze was a danger to the community or a serious flight risk and ordered her release on bond. Doc. # 35 at 55–59. This ruling constituted an "oral order ... made on the record" within the meaning of Rule 59(a). The government accordingly had 10 days to appeal Judge Anderson's ruling.

The government argues that the appeal was timely because it was filed within 10 days of Judge Anderson's release order at the May 24, 2006 hearing. But the government appeals Judge Anderson's decision that Defendants are not sufficient flight risks, and that decision was made on April 27, not May 24. See Docs. ## 35, 36. Moreover, the government appeals Judge Anderson's decision to release both Defendants even though the May 24 hearing was limited to approving the bond for Defendant Tooze. Doc. # 36. Clearly, it is the April 27 order that the government seeks to appeal. If Rule 59(a) controls, the government waived its right to appeal by waiting more than 10 days before acting.

### III. Rule 59(a) Govern Appeals Under 18 U.S.C. § 3145(a).

■ The government argues that § 3145(a) grants a statutory right to seek review of the magistrate judge's order, that the statute contains no time limit for the appeal, and that Rule 59(a) cannot trump a statutory right. The Supreme Court has held that the right to appeal from a magistrate judge's decision can be waived by the parties. *Thomas v. Arn*, 474 U.S. 140, 146, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Rule 59(a) makes this waiver explicit in criminal cases. The question is whether it controls earlier enacted statutes.

Rule 59 became effective on December 1, 2005. The rule was derived from Federal Rule of Civil Procedure 72 and was adopted in response to the Ninth Circuit's decision in *United States v. Abonce–Barrera*, 257 F.3d 959 (2001). See Fed.R.Crim.P. 59, Advisory Committee Notes (2005 Adoption). The court in *Abonce–Barrera* refused to apply Civil Rule 72 in a criminal context and noted that the normal rule-making process would be a more appropriate avenue for placing limits on appeals of magistrate judge decisions in criminal cases. *Id.* at 968. The Advisory Committee accepted the Ninth Circuit's suggestion and proposed Rule 59(a) to "establish the requirements for objecting in a district court to preserve appellate review of magistrate judge's decisions." Advisory Committee Notes (2005 Adoption).

Rule 59(a) was promulgated under authority granted in the Rules Enabling Act, 28 U.S.C. § 2072 ("Enabling Act"). See *United States v. Navarro–Vargas*, 408 F.3d 1184, 1189 (9th Cir.2005) (federal rules of criminal procedure promulgated pursuant to the Enabling Act); *United States v. Daychild*, 357 F.3d 1082, 1093 n. 13 (9th Cir.2004) (construing Rule 45 in conjunction with the Enabling Act); *United States v. Dunlap*, 17 F.Supp.2d 1183, 1185 (D.Colo.1998) (Rule 11(e) promulgated pursuant to Enabling Act). The Enabling Act delegates authority to the Supreme Court, with oversight by Congress, to "prescribe rules of practice and procedure ... for cases in the United States district courts (including proceedings before magistrate judges thereof)." 28 U.S.C. § 2072(a). Section (b) of the Enabling Act, sometimes referred to as the "supersession clause," provides that "[s]uch rules shall not abridge,

enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b). Courts have construed this clause to mean that rules promulgated pursuant to the Enabling Act control over previously enacted procedural statutes to the extent the rules and statutes conflict. *See United States v. Bernard,* 373 F.3d 339, 344–45 (3rd Cir.2004) (supersession clause mandates that FRCrP 11 controls over earlier statute), *United States v. Goodall,* 236 F.3d 700, 708 (D.C.Cir.2001) (Randolph, J., concurring) (same); *Jackson v. Stinnett,* 102 F.3d 132, 135 (5th Cir.1996) (supersession clause trumps previously enacted statutes). Such a conclusion accords with the general view that rules of procedure have the force of law. *See United States v. Prieto–Villa,* 910 F.2d 601 (9th Cir.1989) ("Federal Rules of Criminal Procedure have the force and effect of law").

The conflict between Rule 59(a) and § 3145(a) arises from the rule's statement that failure to object to a magistrate judge's order within 10 days "waives a party's right to review." Section 3145(a) contains no time deadline or waiver provision. Thus, to the extent Rule 59(a) limits the time for appeal and mandates waiver when § 3145(a) grants an unfettered right to appeal, the rule and statute conflict.

Section 3145(a) was last amended by Congress on December 1, 1990. *See* PL 101–650, § 321. Rule 59(a) became effective December 1, 2005. Under the supersession clause of the Enabling Act, Rule 59(a) therefore controls § 3145(a). 28 U.S.C. § 2072(b).

The government does not argue that Rule 59(a)'s mandatory waiver provision abridges a substantive right within the meaning of § 2072(b). Indeed, the government does not address the Enabling Act at all. The Court concludes that procedures for appeal, including waivers that might result from such procedures, are procedural, not substantive. The Ninth Circuit has held that a state law no-waiver rule was not substantive within the meaning of the Enabling Act because " 'it merely establishes when and how those preexisting substantive rules can be reviewed.' " *McCalla v. Royal MacCabees Life*

*Ins. Co.,* 369 F.3d 1128, 1135 (9th Cir.2004) (quoting *Freund v. Nycomed Amersham,* 347 F.3d 752, 761–62 (9th Cir.2003)). Rule 59(a) likewise merely establishes when and how appeal rights can be exercised. *See also Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (statutory right to appeal is not denied by 10–day limit for appeal of magistrate judge's decision, but instead is "merely conditioned upon the filing of a piece of paper.").

Although not mentioned by the parties, the question of whether the government's delay can constitute a waiver of its right to seek review of a release decision was addressed by the Supreme Court in *United States v. Montalvo–Murillo,* 495 U.S. 711, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990). The district court and court of appeals both determined that the defendant posed a danger to the community and a flight risk, but ordered him released because his detention hearing was not timely. *Id.* at 713, 110 S.Ct. 2072. The Supreme Court held that delay of the defendant's detention hearing did not justify his automatic release. *Id.* at 722, 110 S.Ct. 2072. The court found that the Bail Reform Act did not impose automatic release as a sanction for negligence of the government, and that public policy dictated that the government retain its right to argue for detention. *Id.* at 720–721, 110 S.Ct. 2072.

Since deciding *Montalvo–Murillo,* however, the Supreme Court has promulgated Rule 59(a). The rule contains a specific time limit and express waiver provision and applies without limitation to all matters referred to magistrate judges. The Supreme Court's adoption of the rule renders *Montalvo–Murillo* inapplicable. This conclusion is bolstered by the fact that district courts retain discretion to review release and detention orders as discussed below. Thus, the government's waiver of its appeal rights under Rule 59(a) will not automatically result in the release of dangerous defendants—the prospect that concerned the Supreme Court in *Montalvo–Murillo.*

## IV. District Courts Retain Discretion to Review Release Decisions.

 District courts retain authority to review release decisions by magistrate judges

notwithstanding the waiver provision of Rule 59(a). No language in the rule precludes discretionary review by district courts, and the Advisory Committee Notes make clear that such discretion remains: "Despite the waiver provisions, the district judge retains the authority to review any magistrate judge's decision or recommendation whether or not objections are timely filed." This observation by the Advisory Committee comports with court of appeals decisions that district courts possess authority to review magistrate detention decisions on their own motion. *See, e.g.,* *United States v. Gebro,* 948 F.2d 1118, 1120 (9th Cir.1991).

The existence of this discretion does not mean, however, that the foregoing discussion of Rule 59(a) is meaningless. The government and defendants have a *right* to seek review of magistrate judge decisions. 18 U.S.C. § 3145(a). That right is lost under Rule 59(a) by a failure to appeal within 10 days. Any review by the district court following such a waiver is discretionary and not a matter of right.[1]

## V. The Court Will Exercise Its Discretion to Review and Reverse the Release Order.

■ The Court has read the transcripts of the April 27 and May 24, 2006 hearings, the Statement of Probable Cause presented to Judge Anderson in the form of an Affidavit by FBI Special Agent Leising dated April 24, 2006, the Pretrial Service Reports for Defendants Tooze and Herzberg dated April 26, 2006, and the parties' numerous memoranda on release issues (Docs. ## 14, 16, 18, 21, 32, 33, 37, 38, 41, 42). The Court concludes that it should exercise its discretion and reverse Judge Anderson's release order because no

condition or combination of conditions of release will reasonably assure appearance of the Defendants at trial.[2]

Section 3142(g) of the Bail Reform Act specifies the factors that must be considered in determining whether there are conditions of release that will reasonably assure the appearance of Defendants at trial. 18 U.S.C. § 3142(g). These include (1) the nature and seriousness of the offense charged, (2) the weight of the evidence against Defendants, and (3) Defendants' character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history. *United States v. Motamedi,* 767 F.2d 1403, 1407 (9th Cir.1985).[3]

### A. The Nature and Seriousness of the Offense.

Defendants are charged with bank robbery and conspiracy to commit bank robbery in violation of 18 U.S.C. §§ 2113(a) and 371. Doc. # 29. The charges arise from the robbery of Compass Bank in Phoenix, Arizona, on March 7, 2006. Defendant Tooze was employed at the bank. The government alleges that her sister, Defendant Herzberg, appeared at the bank on the morning in question, posing as a male bank robber. Defendant Herzberg is alleged to have taken Defendant Tooze and another bank employee into the vault, forced them to grant her access to money in the vault, and threatened to blow up the bank if Tooze and the co-worker did not remain on their knees in the vault for five minutes after Herzberg left. The robbery netted more than $253,000.

The government alleges that Tooze and Herzberg planned the elaborate crime care-

---

1. A detention hearing may also be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The government does not argue that § 3142(f) applies in this case.

2. Given the extensive briefing already submitted by the parties on release issues (Docs. ## 14, 16, 18, 21, 32, 33, 37, 38, 41, 42), as well as the

arguments made during the April 27, May 24, and May 31 hearings, the Court concludes that additional hearings and briefing are not required before its discretionary review of the magistrate judge's release orders.

3. The *Motamedi* decision includes a fourth factor—the danger to any person or the community that would be posed by the defendant's release—but this factor plainly applies to defendants being detained as possible dangers to the community. Because the Court's decision is based on Defendants' flight risk, this factor will not be addressed.

fully in advance. The affidavit of Agent Leising recites evidence that Defendant Tooze arranged for an unusually large amount of money to be placed in the ATM machine shortly before the robbery (the money in the machine was accessible from the bank's vault). Tooze also allegedly arranged for the bank to have an unusually large amount of additional cash in the vault on the day of the robbery. Defendants are alleged to have visited the bank in advance, taken into account the bank's security system and the location of video surveillance cameras, and developed an elaborate disguise for Defendant Herzberg.

### B. The Strength of the Evidence Against Defendants.

The evidence of Defendant's guilt is substantial. Defendants Tooze and Herzberg are ages 23 and 19, respectively, and lived together in an apartment in Chandler, Arizona. Both women were seen at the bank on the day before the robbery. Several telephone calls were made between Tooze and Herzberg on the morning before the robbery. As noted above, Defendant Tooze ordered an unusually large amount of cash to be present at the bank on the day of the robbery.

During investigation of the crime, Defendant Tooze claimed that she was approached from behind by the robber as she arrived at the bank on the morning in question. She claimed that the robber was a muscular male who grabbed and held her right arm as he led her into the bank, resulting in a sore arm the next day. In fact, according to experienced law enforcement officers, video surveillance footage shows a robber with the physique, mannerisms, and posture of a female. The robber is holding Tooze's left arm, not the right arm that she claimed was sore the next day. The surveillance video also shows the robber carrying a bag of money with the loops over her arm like a purse.

Tooze's co-worker at the bank believed the robber was female, even though she was wearing a trench coat, hat, sunglasses, and a scarf around her face and neck. The co-worker stated that the robber's voice was that of a female. The co-worker also noted that Tooze and the robber were present and alone in the bank when she arrived that morning, and that it was very unusual for Tooze to arrive before the co-worker did.

Defendant Herzberg claimed that she spent the night of March 6 and morning of March 7 at her apartment with a Virginia football player. When interviewed in Virginia, however, the man said he was with Herzberg on March 5 and 6 and could not account for her whereabouts on the morning of March 7.

A friend of Defendant Herzberg's told FBI agents that Herzberg visited his home on March 9, 2006, and told him that she and her sister had robbed a bank, describing the crime in detail. The detail provided by Herzberg matched unpublicized facts about the robbery at Compass Bank. The next day, March 10, 2006, Herzberg brought $266,000 in cash to the friend's home and asked him to watch it for her. The cash was contained in a bag matching the description of the robber's bag. Defendant Herzberg retrieved the money from the friend the next day.

Herzberg and the friend proceeded to argue over the next several days about whether the friend would be paid for holding the money and whether the friend had stolen part of the money while holding it. Agents retrieved portions of this argument from the friend's voice and text messages, including a message from Herzberg urging the friend not to tell the FBI what he knew.

Following the robbery, Defendants traveled to several cities including Los Angeles, Lake Havasu, and Albuquerque, and made plans to travel to Las Vegas. Defendants also made several large cash purchases at local stores. The more than $250,000 stolen from the bank has not been located, but more than $8,000 in cash was found during a search of Defendants' apartment.

The Ninth Circuit has stated that the weight of the evidence against a defendant is the least important factor identified in § 3142(g). *See United States v. Winsor,* 785 F.2d 755, 757 (9th Cir.1986). It is a factor nonetheless, and the Court concludes that the evidence against Defendants is substantial.

### C. Defendants' Character and Community Ties.

#### 1. Defendant Tooze.

Defendant Tooze has no prior criminal history. Investigations by federal agents revealed, however, that she was terminated from her employment at a bank in Oregon for theft of bank funds.

Shortly before the robbery at Compass Bank, Defendant Tooze leased a 2006 Mercedes Benz automobile, paying $6,000 in cash. She later was stopped while driving 110 miles per hour on Interstate 10.

Defendant Tooze does not have strong ties to Arizona. She had lived in Arizona for only 10 months as of April 27, 2006, having previously resided in Oregon. Defendant Tooze does not own a home and, since her indictment for bank robbery in this case, is not employed.

Defendant's mother lives in Arizona, as does her sister (Herzberg), and brothers. Agent Leising avowed that Defendant's mother acted irrationally and in an obstructive manner when agents sought to search Defendants' apartment.

#### 2. Defendant Herzberg.

Defendant Herzberg has been a resident of Arizona for approximately 12 years. She does not own a home or other property and shared an apartment with her sister. Defendant Herzberg has no prior criminal history. Like Defendant Tooze, her family ties to Arizona include her mother, co-Defendant, and two brothers.

Defendant Tooze reported that she has been employed at In–N–Out Burger. According to information obtained by investigating agents, Defendant Herzberg also earned money as a massage therapist and prostitute. She traveled to Amsterdam in February of 2006.

### D. Conclusion.

The government must prove flight risk by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406. The Court concludes that the government has met this burden. Defendants are charged with committing a serious crime that could result in lengthy prison sentences. The evidence against them is substantial. Defendant Tooze is a recent Arizona resident. Neither Defendant owns property or has other substantial economic ties to Arizona. Most significantly, the $250,000 stolen from Compass Bank has not been recovered and allegedly was last seen in the possession of Defendant Herzberg.

Judge Anderson concluded that Defendants were flight risks, but not serious flight risks. The Court respectfully disagrees. Although Judge Anderson ordered each Defendant to post secured bonds of $100,000, and the fiancé of Defendants' mother raised such a bond for Defendant Tooze, the Court concludes that the bond will not reasonably assure the appearance of Defendants at trial. The Court accordingly will reverse Judge Anderson's release order and require that Defendants be detained pending trial.

**IT IS ORDERED:**

1. The government's appeal of the order releasing Defendants (Docs ## 18, 33) is **denied** pursuant to Federal Rule of Criminal Procedure 59(a).

2. The Court, on its own motion, has reviewed Judge Anderson's Order and will require that Defendants be detained pending trial pursuant to 18 U.S.C. § 3142.

3. Defendant Herzberg's motion to reduce bond (Doc. # 32) is **denied** in light of the Court's conclusion that Defendants must be detained.