143 P.3d 795 (2006)
STATE of Washington, Respondent,
v.
Amir Clyde SULEIMAN, Petitioner.
No. 76807-2.
Supreme Court of Washington, En Banc.
Argued November 15, 2005.
Decided October 5, 2006.
Suzanne Lee Elliott, Attorney at Law, Seattle, for Petitioner/Appellant.
Deborah A. Dwyer, Brian Martin McDonald, King Co. Prosecutor's Office, Appellate Unit, Seattle, for Appellee/Respondent.
*796 BRIDGE, J.
¶ 1 On October 27, 2002, Amir Clyde Suleiman drove away from a Halloween party with four passengers in the car. His driving became increasingly aggressive and he refused to stop or slow down, even when his passengers pleaded with him. Suleiman caused an accident that injured all of his passengers and left one paralyzed. He pleaded guilty to three counts of vehicular assault. In his plea agreement he stipulated that the facts set forth in the certification for determination of probable cause and the prosecutor's summary were real and material facts for the purposes of sentencing. However, he did not agree that those facts *797 formed a legal basis for an exceptional sentence. For the most severely injured victim, he was sentenced to a 48-month exceptional sentence based on her particular vulnerability. He now challenges that exceptional sentence, arguing that it violates the Sixth Amendment pursuant to Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), because a jury did not find the necessary facts beyond a reasonable doubt.
¶ 2 We recognize that Suleiman's behavior was reprehensible and we express great sympathy for his victims, especially for Kim Dwyer whose injuries were particularly severe. Yet even if we assume for the sake of argument that Suleiman's stipulation is valid, the trial court had to make additional factual findings above and beyond the admitted facts in order to support an exceptional sentence based on victim vulnerability. Because those facts were not found by a jury beyond a reasonable doubt, Suleiman's exceptional sentence violates the Sixth Amendment under Blakely. Even so, the United States Supreme Court recently concluded that Blakely errors can be subject to harmless error analysis. Washington v. Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). We therefore remand to the Court of Appeals for determination of whether the Blakely error in this case was harmless.[1]

I

Statement of Facts
¶ 3 In the early morning hours of October 27, 2002, Suleiman left a Halloween party driving his girl friend's Honda Civic. There were four passengers in the car, including Kim Dwyer who was seated in the rear middle seat. Dwyer was not wearing a seatbelt. As Suleiman drove aggressively through residential streets, the passengers yelled at him to slow down and to stop the car so that they could get out. Suleiman ignored their pleas and told the women to shut up. Once on State Route 169, he increased his speed to around 70 miles per hour, despite the 50 mile per hour speed limit. According to witnesses, Suleiman swerved to the left toward oncoming traffic and then back into his lane. He lost control; the car struck an embankment and rolled. Dwyer and one other passenger were ejected from the car. The two other passengers were injured but remained in the car. Suleiman sustained only minor injuries.
¶ 4 Dwyer suffered injury to the C4-C6 level of her spine and was paralyzed from the neck down. Suleiman's girl friend sustained a fractured pelvis and several other injuries. The other passengers suffered broken bones, severe lacerations, and severe bruising, but no life-threatening injuries.
¶ 5 At the accident scene, Suleiman identified himself as the driver and told the police that the accident was his fault. The officer noticed that Suleiman appeared to be intoxicated. Suleiman was transported to the hospital where his blood was drawn within two hours of the accident. His blood alcohol level was 0.12g/100ml, one and a half times the legal limit. RCW 46.61.502(1)(a) (setting limit at 0.08 within two hours of driving).
¶ 6 Suleiman was charged with three counts of vehicular assault. He pleaded guilty. The standard range sentence for each count was 15 to 20 months and the maximum term was 10 years. The statement on the plea of guilty explains that the prosecutor planned to recommend a 36-month exceptional sentence followed by 18 to 36 months' community custody. The statement also explains that Suleiman agreed to "stipulate to real and material facts as written in the certification for determination of probable cause and the prosecutor's summary without stipulating that those facts are a legal basis for an exceptional sentence." Clerk's Papers (CP) at 15 (emphasis added). Similarly, in the plea agreement the parties stipulated that the facts set forth in the certification for determination of probable cause and the prosecutor's summary were *798 "real and material facts for purposes of this sentencing." CP at 32. Suleiman did not waive his right to appeal an exceptional sentence. CP at 15 (explaining that either party could appeal a sentence outside of the standard range).
¶ 7 The trial judge sentenced Suleiman to an exceptional sentence of 48 months for count 1 (vehicular assault against Dwyer), and high-end standard sentences of 20 months for counts 2 and 3, to be served concurrently. In the findings of fact and conclusions of law supporting the exceptional sentence, the trial judge reported that he considered presentence reports and briefing from both parties, a CD (compact disc) containing a slide show on Dwyer's life, letters sent on behalf of the defendant, letters from victims, family, and friends, and arguments of counsel. He also heard from various people, including the victims and Dwyer's father.
¶ 8 The trial court made the following findings of fact: Suleiman had a blood alcohol level of 0.12g/100ml after the accident, CP at 67; he drove aggressively in a residential neighborhood just before the accident, CP at 68; the passengers in the rear seats yelled at him to slow down and let them out, but he told them to shut up; he drove even faster and increased his aggressive driving, id.; his estimated speed was 70 miles per hour in a 50 mile per hour zone, id.; Suleiman swerved sharply back and forth across lanes and seemed to be intentionally swerving at some construction barrels, id.; the resulting accident caused Kim Dwyer to suffer devastating, life-threatening injuries to her spinal cord, id.; the defendant seemed to be acting in anger and his response to the passengers' pleas showed his purposeful aggressive driving, id.; the passengers were "virtually trapped and held captive by a dangerous drunk driver," id.; "[t]heir screams were met by more dangerous driving and telling them to `shut up,'" id.; "[t]he defendant knew the women in the rear of his car were at his mercy, yet he showed them none," id.; the defendant knew that the women in the car were subject to incredible risk of physical harm, yet he continued to drive aggressively, and the injury to Dwyer was extraordinary and permanent, id.
¶ 9 The trial court concluded that the following substantial and compelling reasons existed to support an exceptional sentence: (1) the injury to Dwyer was far greater than that contemplated by the legislature in setting the injury element of vehicular homicide at substantial bodily injury, and the defendant knew or should have known that the passengers could have suffered serious injury or death; (2) Kim Dwyer was a particularly vulnerable victim, and the defendant knew or should have known of that vulnerability; and (3) the circumstances of the crime were far more egregious than the typical vehicular assault, and the goals of the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW, would not be realized by a standard range sentence. The court also concluded that each of the substantial and compelling reasons, standing alone, was sufficient to justify the length of the exceptional sentence imposed.
¶ 10 Suleiman appealed, arguing the trial court erred in imposing an exceptional sentence. State v. Suleiman, noted at 121 Wash.App. 1067, 2004 WL 1203884, at *1, 2004 Wash.App LEXIS 1147, at *1. The Court of Appeals affirmed the exceptional sentence and concluded that the trial court properly found that Dwyer was particularly vulnerable. Id. at *3, 2004 Wash.App LEXIS 1147 at *9. Because Dwyer's vulnerability was sufficient to support the exceptional sentence, the Court of Appeals did not address the sufficiency of the other reasons given by the court. Id. at *3, 2004 Wash.App LEXIS 1147 at *10. Blakely, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, was subsequently decided, and Suleiman moved for reconsideration based on that case. The Court of Appeals denied reconsideration, stating that the issues presented by his case were controlled by State v. Harris, 123 Wash.App. 906, 99 P.3d 902 (2004) (constitutionality of the sentencing statute), State v. Hagar, 126 Wash. App. 320, 105 P.3d 65 (2005), and State v. Ermels, 125 Wash.App. 195, 104 P.3d 67 (2005). Order Denying Recons. The Court of Appeals did not elaborate further. Suleiman filed a petition for review, which this court granted. State v. Suleiman, noted at 154 Wash.2d 1033, 119 P.3d 852 (2005).

*799 II

Analysis
¶ 11 By statute, a Washington court may impose an exceptional sentence outside the standard range if it concludes that "there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. RCW 9.94A.535 provides that whenever an exceptional sentence is imposed, the court must set forth reasons for its decision in written findings of fact and conclusions of law. At the time of Suleiman's plea, a nonexclusive list of factors justifying an upward departure from a standard range sentence was set forth in former RCW 9.94A.535(2) (2003). At that time an exceptional sentence above the standard range was justified if "[t]he defendant knew or should have known that the victim ... was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health." Former RCW 9.94A.535(2)(b).[2] In addition to the statutory factors, Washington courts had recognized additional aggravating circumstances, including the particular vulnerability of some vehicular assault victims. See, e.g., State v. Cardenas, 129 Wash.2d 1, 10, 914 P.2d 57 (1996).
¶ 12 The Sixth Amendment guarantees criminal defendants a right to trial by jury. U.S. CONST. amend. VI. In 2000, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). After Apprendi, this court held that "the factual basis for an exceptional sentence upward need not be charged, submitted to the jury, and proved beyond a reasonable doubt" because aggravating factors "neither increase the maximum sentence nor define a separate offense calling for a separate penalty." State v. Gore, 143 Wash.2d 288, 314-15, 21 P.3d 262 (2001), overruled by Hughes, 154 Wash.2d 118, 110 P.3d 192. In Blakely, 542 U.S. at 303, 124 S.Ct. 2531, the United States Supreme Court disagreed and held that the "`statutory maximum'" is the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." In other words, the "statutory maximum" is the maximum that a judge may impose "without any additional findings." Id. at 303-04, 124 S.Ct. 2531.
¶ 13 However, the Blakely Court also acknowledged that a jury need not find facts supporting an exceptional sentence when a defendant pleads guilty and stipulates to the relevant facts:
But nothing prevents a defendant from waiving his Apprendi rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty.
Id. at 310, 124 S.Ct. 2531 (emphasis added) (citations omitted).
¶ 14 Suleiman argues that Washington's exceptional sentencing law is facially unconstitutional after Blakely. He also contends that the exceptional sentence in his case depends upon facts to which he did not stipulate, and those facts were improperly found by the trial judge. In addition, he asserts that in stipulating to the facts contained in the certification for probable cause, he did not knowingly, intelligently, and voluntarily waive his right to have a jury determine the facts necessary to support his exceptional sentence. Finally, he argues that the proper remedy for the Blakely violation in his case is remand for resentencing within the standard range.
¶ 15 Blakely Fact Finding: Recently, in Hughes, 154 Wash.2d 118, 110 P.3d 192, we concluded that Blakely did not render Washington's exceptional sentencing provisions facially unconstitutional. Id. at 134, 110 P.3d 192. Thus, we must determine *800 whether Suleiman's exceptional sentence depended upon improper Blakely fact finding, taking into account Blakely's exception for stipulated facts.
¶ 16 In Hughes, we analyzed whether the trial court engaged in improper Blakely fact finding in each of three consolidated cases. Id. One of the aggravating factors at issue there required the trial court to find that the operation of the multiple offense policy rendered the presumptive sentence clearly too lenient in light of the purposes of the SRA. Id. at 136-37, 110 P.3d 192. In case law, this court had further defined the inquiry to require a court to find one of two factual bases for the aggravating factor: (1) egregious effects of the defendant's multiple offenses or (2) the level of the defendant's culpability resulting from the multiple offenses. Id. at 137, 110 P.3d 192. Yet the question of whether the facts alleged and found were sufficiently substantial and compelling to warrant an exceptional sentence remained a legal judgment, which could still be made by a trial court post-Blakely. Id. Because this court had outlined specific factual findings a court must show to support a too lenient conclusion, existence of the too lenient factor was not merely a legal conclusion. Id. The Blakely Court did not authorize such additional judicial fact finding, and we concluded that the too lenient conclusion was one that had to be made by a jury. Id. at 137, 140, 110 P.3d 192. When the sentencing judge found that the aggravating factor existed, the court violated the defendant's Blakely right. See id. at 137, 140, 110 P.3d 192. We went on to hold that a Blakely Sixth Amendment violation cannot be harmless. Id. at 148, 110 P.3d 192.
¶ 17 In sum, the Hughes court concluded that after Blakely, the required underlying factual bases for the aggravating factor were factual findings that had to be determined by a jury. The trial judge was left only with the legal conclusion of whether the facts alleged and found were sufficiently substantial and compelling to warrant an exceptional sentence.[3]
¶ 18 In this case the Court of Appeals upheld only the factor that Dwyer was a particularly vulnerable victim and that is the factor that the State now argues is supported by the stipulated facts. Suleiman at *3, 2004 Wash.App. LEXIS 1147, at *9; Suppl. Br. of Resp't at 9-10. At the time of Suleiman's sentencing, an exceptional sentence above the standard range was justified if "[t]he defendant knew or should have known that the victim ... was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health." Former RCW 9.94A.535(2)(b), amended by LAWS OF 2005, ch. 68, § 3(3)(b). While none of these specific vulnerabilities is present, this court has recognized that a vehicular assault victim can be particularly vulnerable where the victim was relatively defenseless. State v. Nordby, 106 Wash.2d 514, 518, 723 P.2d 1117 (1986). Given that vulnerability based on a nonlisted characteristic still has its origins in the statutory factor, we have held that the statute's requirement of particular vulnerability must be satisfied. Gore, 143 Wash.2d at 317, 21 P.3d 262. In order for the victim's vulnerability to justify an exceptional sentence, the State must show (1) that the defendant knew *801 or should have known (2) of the victim's particular vulnerability and (3) that vulnerability must have been a substantial factor in the commission of the crime. Gore, 143 Wash.2d at 318, 21 P.3d 262.
¶ 19 Similar to the analysis applicable for the "clearly too lenient" aggravating factor at issue in Hughes, this court has recognized factual bases that must support a finding that the victim was particularly vulnerable. Moreover, the conclusion that a victim is particularly vulnerable involves a determination that the conclusion is supported by the facts in the record. See RCW 9.94A.585(4). Whether an aggravating factor exists in a particular case, i.e., whether it is supported by the record, has been deemed a factual question by this court. Nordby, 106 Wash.2d at 517-18, 723 P.2d 1117; see also Cardenas, 129 Wash.2d at 5, 914 P.2d 57 (applying a clearly erroneous standard to this question); State v. Fisher, 108 Wash.2d 419, 423, 739 P.2d 683 (1987). Even though the State characterizes the question of whether a victim was particularly vulnerable as a legal inquiry, our case law belies this conclusion.[4]
¶ 20 Therefore, we conclude that in order for Suleiman's plea to comply with the Blakely stipulation exception, he must have stipulated to the underlying facts. He must also have stipulated to the enumerated factual bases for particular vulnerability (that he knew or should have known the victim was particularly vulnerable and this was a substantial factor in the crime). Finally, he must have stipulated that the record supported a determination of particular vulnerability. Otherwise, the trial court engaged in decision-making that this court has labeled as fact finding.
¶ 21 Here, Suleiman stipulated to real and material facts as written in the certification for determination of probable cause and prosecutor's summary. CP at 15. These documents clearly establish the underlying facts, including that the women were screaming for Suleiman to slow down or stop the car, and in response he drove more aggressively. CP at 3, 6-7. While the documents imply that Suleiman knew or should have known that Dwyer was particularly vulnerable, they do not say so specifically, nor do they state that vulnerability was a substantial factor in the crime. In addition, Suleiman did not stipulate that the record supported a finding that Dwyer was a particularly vulnerable victim. Even assuming Suleiman's stipulation is valid, the trial court still had to make these factual conclusions to support an exceptional sentence based on victim vulnerability. Because these factual conclusions were not part of the stipulation and they were not found by a jury beyond a reasonable doubt, we conclude that Suleiman's exceptional sentence violates Blakely.
¶ 22 The State argues that Suleiman should not be allowed to enjoy the benefit of his plea agreement without suffering the consequences of his stipulation, and thus, Suleiman cannot challenge his exceptional sentence without challenging his entire plea agreement. Indeed, in State v. Ermels, 156 Wash.2d 528, 131 P.3d 299 (2006), the companion to this case, we held that Ermels cannot challenge his exceptional sentence without challenging his entire plea agreement. However, Ermels stipulated to the facts supporting his exceptional sentence and that they constituted a legal basis for an exceptional sentence. In other words, Ermels' consent to the imposition of an exceptional sentence was part of his plea bargain. Ermels does not claim that his exceptional sentence depends upon improper Blakely fact finding.
¶ 23 In contrast, even if we assume in this case that Suleiman's stipulation is entirely valid, the trial court still engaged in improper Blakely fact finding. The State points out that Suleiman expressly refused to stipulate that there was a legal basis for the exceptional sentence and seems to conclude that Suleiman stipulated to all but the legal conclusion. But as discussed above, the stipulated facts *802 are not enough  the trial court had to find additional facts to support the exceptional sentence. Simply put, Suleiman need not challenge his stipulation at all in order to establish that a Blakely violation occurred in this case.[5]
¶ 24 In sum, even assuming Suleiman's stipulation is valid, his exceptional sentence based on victim vulnerability depends upon additional facts. Those facts were not found by a jury beyond a reasonable doubt. Therefore, Suleiman's exceptional sentence violates Blakely. Because we conclude that Suleiman's exceptional sentence relies on facts outside of the stipulation in violation of Blakely, we need not determine whether the stipulation itself was knowing, intelligent, and voluntary.
¶ 25 Harmless Error: In State v. Recuenco, 154 Wash.2d 156, 110 P.3d 188 (2005), this court held that a Blakely Sixth Amendment error never constitutes harmless error. The United States Supreme Court recently reversed this holding in Washington v. Recuenco, 126 S.Ct. at 2553, though the Court left open the question of whether Blakely might always be harmful under state law. In this case the State argued at the Court of Appeals that the claimed error was harmless because Suleiman stipulated to the underlying facts on which his exceptional sentence was based. Suppl. Br. or Resp't to the Court of Appeals at 19-21. Because it found no error, the Court of Appeals did not address the harmless error question. See State v. Suleiman at *3, 2004 Wash.App. LEXIS 1147, at *10. Pursuant to RAP 13.7(b), we remand to the Court of Appeals for consideration of whether the Blakely error in this case was indeed harmless.

III

Conclusion
¶ 26 Even assuming Suleiman's stipulation is valid, the trial court had to make additional factual conclusions to support an exceptional sentence based on victim vulnerability. Because those facts were not found by a jury beyond a reasonable doubt, we hold that Suleiman's exceptional sentence violates Blakely. We remand to the Court of Appeals for determination of whether the Blakely error was harmless.
Concurring: MADSEN, SANDERS, CHAMBERS, OWENS and FAIRHURST, JJ.
ALEXANDER, C.J. (dissenting).
¶ 27 The United States Supreme Court decision in Blakely v. Washington, 542 U.S. *803 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), has been described as a "sea change in the body of sentencing law."[1] To be sure, Blakely restricted judicial discretion in determining when criminals deserve exceptional punishment. But this change did not sweep away the vital role of the judge in deciding as a matter of law, based on facts already proved or admitted, whether an exceptional sentence is warranted. I believe the majority in this case takes Blakely too far, unwisely shifting questions of law from the judge to the jury, whose proper role is to decide questions of fact. In my view, when Amir Suleiman stipulated that he drove too fast while intoxicated, ignored his passengers' screams to let them out, and caused Kim Dwyer to spend the rest of her life as a quadriplegic, he invited the judge to decide as a matter of law that those facts warranted a 48-month exceptional sentence. Therefore, I dissent.

I. Blakely

¶ 28 Blakely held that Washington State's former sentencing scheme, which authorized judges to impose exceptional sentences based on their own determination of aggravating facts, violated the defendant's right to have a jury find the existence of "any particular fact which the law makes essential to the punishment." Blakely, 542 U.S. at 301, 124 S.Ct. 2531 (quoting 1 JOEL PRENTISS BISHOP, CRIMINAL PROCEDURE § 87, at 55 (2d ed. 1872)). We have summarized Blakely's impact on Washington sentencing as follows: "[A]ny fact other than that of a prior conviction, which increases the applicable punishment, must be found by a jury beyond a reasonable doubt (unless it is stipulated to by the defendant or the defendant waives his right to a jury finding)." State v. Hughes, 154 Wash.2d 118, 126, 110 P.3d 192 (2005) (emphasis added). Thus, Blakely prohibits judicial fact finding once a defendant invokes the constitutional right to a jury trial.
¶ 29 But when a defendant pleads guilty, Blakely allows judicial sentence enhancements "so long as the defendant . . . stipulates to the relevant facts." Blakely, 542 U.S. at 310, 124 S.Ct. 2531 (emphasis added). And regardless of how facts are established  whether by jury trial, bench trial, or stipulation  we have always understood that "Blakely left intact the trial judge's authority to determine whether facts alleged and found are sufficiently substantial and compelling to warrant imposing an exceptional sentence under RCW 9.94A.535. That decision is a legal judgment which, unlike factual determinations, can still be made by the trial court." Hughes, 154 Wash.2d at 137, 110 P.3d 192 (emphasis added); see also State v. Van Buren, 123 Wash.App. 634, 646 n. 5, 98 P.3d 1235 (2004) ("once the jury determines the threshold facts, the judge's role  to determine the effect of these facts  is not diminished" by Blakely).
¶ 30 But what are the bounds of this "legal judgment" about sentencing when a defendant stipulates to the facts of his guilt? Blakely did not reach this question.[2] Unlike Suleiman, the defendant in Blakely admitted only the bare elements of his crime and "no other relevant facts." Blakely, 542 U.S. at 299, 124 S.Ct. 2531. And while Suleiman's sentence was based on facts he admitted as part of his plea agreement, Blakely's exceptional sentence was based on adverse testimony of witnesses at a postplea bench hearing. Thus, Blakely simply does not address the situation here, except to state generally that "judicial sentence enhancements" may be based on "relevant" stipulated facts. Therefore, nothing in Blakely barred the judge in this case from finding that Suleiman's high speed and drunken condition, and the serious permanent injury to his trapped passenger, warranted an exceptional sentence under former RCW 9.94A.535 (2003). On the contrary, Blakely said that "the Sixth Amendment was not written for the benefit of those who choose to forgo its protection" *804 by waiving the right to a jury trial. Blakely, 542 U.S. at 312, 124 S.Ct. 2531.
¶ 31 By interpreting Blakely to require a stipulation or jury finding for legal conclusions as well as facts, the majority ignores contrary interpretations among federal courts around the country. In United States v. Booker, 543 U.S. 220, 233, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the United States Supreme Court confirmed that Blakely applies to federal sentencing. Since then (or in anticipation of that ruling), federal courts have repeatedly imposed or upheld exceptional sentences that were based on stipulated facts, without any corresponding stipulation to the legal effect of those facts. See United States v. Paulus, 419 F.3d 693, 699 (7th Cir.2005) (where federal sentencing guidelines authorized an upward departure for significant disruption of a governmental function, the court could enhance defendant's sentence based on judicial notice of the fact that his admitted bribery undermined public confidence in Wisconsin's judicial system, despite defendant's argument that he "`did not intend to admit any facts for purposes of sentence enhancement under Blakely/Booker'"); United States v. Gallegos-Aguero, 409 F.3d 1274, 1276 (11th Cir.2005) (defendant need not stipulate to the characterization of a prior conviction as an "`alien smuggling offense,'" although that characterization results in a higher sentence); United States v. Fagans, 406 F.3d 138, 142 (2d Cir.2005) ("[s]ince the Defendant made no objection to the facts contained in the [presentence report],... its use to enhance the base offense level was correct"); United States v. Murdock, 398 F.3d 491, 502 (6th Cir.2005) (where the defendant admitted facts that supported the court's calculation of a $132,000 loss, that amount could serve as a basis for an enhanced sentence although the defendant did not stipulate to the calculation); Borrero-Arroyo v. United States, 379 F.Supp.2d 232, 239 n. 9 (D.P.R.2005) (where the petitioner did not object to the government's assertion that he had a leadership role in a heroin-selling conspiracy, and where he admitted he was the "owner of drug points" in certain wards of Puerto Rico, Blakely did not bar a sentence enhancement based on a leadership role); United States v. Fotiades-Alexander, 331 F.Supp.2d 350, 353 (E.D.Pa.2004) (where the defendant admitted that her victims were either dead or disabled, "[t]his serves as an admission of the vulnerability of the victims" for the purposes of an enhanced sentence, and defendant's admission to being a fiduciary similarly allowed an enhancement based on abuse of trust). These cases persuasively establish that Blakely does not prohibit judges from enhancing sentences based on stipulated facts, even if the defendants never stipulated to the legal conclusions drawn from those facts.[3]
¶ 32 Fotiades-Alexander is especially noteworthy because the defendant in that case never admitted that she knew or should have known that her victims were "vulnerable." Fotiades-Alexander, 331 F.Supp.2d at 353. Yet the court enhanced her sentence based on vulnerability of the victims because she
admitted she was chosen as a member of the [Veteran's Affairs] Commission Fiduciary Program to manage and oversee the financial affairs of veterans who were either physically disabled or mentally disabled and that she wrote checks on the accounts of veterans for whom she served as the federal fiduciary. This serves as an admission of the vulnerability of the victims....
*805 Id. (emphasis added). Similarly under our state law, Suleiman could not receive a vulnerability enhancement unless he knew or should have known of his victim's vulnerability. Former RCW 9.94A.535(2)(b) (2003), recodified as RCW 9.94A.535(3)(b). Just as the admitted facts in Fotiades-Alexander supported the judge's legal conclusion that the defendant knew of the victims' vulnerability, in this case Suleiman's admissions supported the same conclusion. After all, Suleiman stipulated that "Sarah, Kim and Melissa were yelling at Suleiman, telling him to slow down and let them out of the car," and that he "ignored the passengers' pleas for him to stop. He yelled back at them to `shut up', and continued to drive faster." Clerk's Papers (CP) at 3. It is preposterous to suggest that passengers trapped in a speeding car by a drunk driver are not "vulnerable" by any definition of the word. Therefore, the judge properly concluded that Suleiman knew or should have known that Kim Dwyer, whom he rendered quadriplegic, was particularly vulnerable. Yet although the judge labeled this determination a "conclusion[ ] of law," the majority insists it actually was an impermissible "factual" determination. CP at 68; majority at 801. This is folly in light of Fotiades-Alexander, similar federal rulings, our own precedents, and plain logic.

II. Fact v. Law

¶ 33 The majority acknowledges that it is for a judge  not a jury  to decide whether the facts of a crime are "sufficiently substantial and compelling" to warrant an exceptional sentence. Majority at 800. But the majority blurs the distinction between factual findings relegated to the jury and legal conclusions properly left with the judge, referring confusingly to "factual conclusions." Majority at 801.[4] This assertion is sure to worsen confusion among courts. "The importance of the law-fact distinction is surpassed only by its mysteriousness.... [T]he distinction continues to bedevil courts and commentators alike." Ronald J. Allen & Michael S. Pardo, The Myth of the Law-Fact Distinction, 97 Nw. U.L. REV. 1769, 1769 (2003).
¶ 34 The majority's bedevilment is apparent from a lengthy footnote in which it strains to characterize a judge's legal reasons for exceptional sentences as "factual determination[s]." Majority at 800 n. 3. One of the cases cited is State v. Cardenas, 129 Wash.2d 1, 914 P.2d 57 (1996). But that case actually undermines the majority's position.
¶ 35 In Cardenas, the defendant did not object to the factual findings of his victim's injuries, including broken bones, lost cognitive function and amputation of part of her leg, but objected only "to their characterization as more serious than inherent in the crime." Id. at 6 n. 1, 914 P.2d 57 (emphasis added). We said that "the determination of the underlying facts is a question of fact, whereas the determination of whether those facts justify an exceptional sentence is a question of law." Id.[5] The same reasoning applies here. Suleiman, like the defendant in Cardenas, did not dispute the "underlying facts" of his vehicular assault. Thus in this case, as in Cardenas, it was for the judge to decide how to characterize those already-determined facts for sentencing purposes. Furthermore, this court upheld Cardenas's exceptional sentence based on victim vulnerability although "[t]he trial court made no specific findings regarding whether Cardenas knew or should have known of a risk to pedestrians" before his vehicle struck the unsuspecting victim in her backyard. Id. at 12, 914 P.2d 57. Thus, we decided as a matter of law, in the absence of any factual stipulation or finding regarding the defendant's state of mind, that because the defendant was in a residential area he "either knew or should have known that there would be people such as the victim here, totally unprepared and vulnerable." Id. Just as the underlying facts in Cardenas warranted an *806 exceptional sentence without any stipulation or finding as to the defendant's knowledge of vulnerability, Suleiman's knowledge of Dwyer's vulnerability in this case is similarly established as a matter of law based on the underlying stipulated fact that she was powerless to escape from his car.

III. Other Reasons
¶ 36 To reverse an exceptional sentence, this court must find that: (a) the record did not support the sentencing court's reasons for the sentence or those reasons do not justify an exceptional sentence, or (b) the sentence was clearly excessive. RCW 9.94A.585(4). Our review "shall be made solely upon the record that was before the sentencing court," and briefs "shall not be required." RCW 9.94A.585(5) (emphasis added). Not every reason must be valid to uphold an exceptional sentence. Hughes, 154 Wash.2d at 134, 110 P.3d 192. "Where the reviewing court overturns one or more aggravating factors but is satisfied that the trial court would have imposed the same sentence based upon a factor or factors that are upheld, it may uphold the exceptional sentence." State v. Jackson, 150 Wash.2d 251, 276, 76 P.3d 217 (2003).
¶ 37 Despite the standards just described, the majority incorrectly limits its analysis to only one of the judge's three reasons for Suleiman's exceptional sentence  the vulnerability of Dwyer. It does so apparently because "that is the factor that the State now argues is supported by the stipulated facts." Majority at 800 (citing Suppl. Br. of Resp't at 9-10). But the State's brief should not guide our analysis. We are to review exceptional sentences "solely" based on the record that was before the sentencing court. RCW 9.94A.585(5). If legislators had intended to limit our review of sentences to the issues raised in briefs, they certainly would not have stated that "briefs shall not be required." Id. More importantly, as noted above, we may uphold a sentence even if only one of the reasons for it is valid. Therefore, the majority's failure to address two of the three reasons for Suleiman's exceptional sentence  other than asserting in a dismissive footnote that they "necessarily involve[]" an impermissible factual comparison by the judge  is a fatal flaw in its analysis. Majority at 802 n. 5.
¶ 38 In fact, we should uphold Suleiman's sentence based on the judge's first reason  that "[t]he injury to Kim Dwyer is far greater than that contemplated by the legislature in setting the injury element of vehicular assault at `substantial bodily injury."' CP at 68.
¶ 39 Particularly severe injuries may justify an exceptional sentence only if they are greater than the injuries contemplated by the legislature in setting the standard sentence range for the crime. See State v. Armstrong, 106 Wash.2d 547, 550-51, 723 P.2d 1111 (1986). In at least two prior vehicular assault cases, Cardenas, 129 Wash.2d at 6-7, 914 P.2d 57, and State v. Nordby, 106 Wash.2d 514, 519, 723 P.2d 1117 (1986), we found that particularly severe injuries did not justify exceptional sentences. However, after those cases were decided, the legislature changed the degree of injury necessary for standard punishment of vehicular assault from "serious bodily injury" to "substantial bodily harm." LAWS OF 2001, ch. 300, § 1. "`Substantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b) (emphasis added). Thus, since 2001, the legislature has envisioned a standard-range sentence for vehicular assaults that cause temporary injury only. In this case, because of Suleiman's vehicular assault, Dwyer will never walk again, nor feed or bathe herself. Indeed, Suleiman stipulated that she is a quadriplegic due to the "catastrophic spinal cord injury" resulting from his assault. CP at 9. In sum, this permanent and utterly disabling injury is far worse than the fracture or other "temporary injury" that the legislature contemplated in setting the standard range. Suleiman's sentence should be affirmed on that ground alone.
¶ 40 Even if Dwyer's permanent injury was not enough reason to affirm the sentence, her particular vulnerability provides *807 another reason, as explained above. Based on the foregoing analysis, I would affirm Suleiman's exceptional sentence.
Concurring: J.M. JOHNSON and C. JOHNSON, JJ.
NOTES
[1] We note that before the United States Supreme Court decided Washington v. Recuenco, we granted Suleiman's motion for release pending appeal because at that time, given the Blakely sentencing error, he had served more than the lawful sentence. If the Court of Appeals determines on remand that the law now allows Suleiman's original sentence to stand, then it can order the superior court to take action requiring Suleiman to serve the remainder of his original sentence.
[2] See also RCW 9.94A.535(3)(b) ("The defendant knew or should have known that the victim ... was particularly vulnerable or incapable of resistance.").
[3] Other Washington case law establishes that the existence of an aggravating factor itself is a factual finding that must be determined by a jury. By statute, an exceptional sentence is reversible if the record does not support the reasons supplied by the sentencing court, the reasons stated do not support an exceptional sentence, or the sentence imposed was clearly too excessive or too lenient. RCW 9.94A.585(4). In the context of discussions about standard of review, this court has held that whether a court's stated reasons are sufficiently substantial and compelling to support an exceptional sentence is a question of law. Cardenas, 129 Wash.2d at 6 n. 1, 914 P.2d 57; State v. Chadderton, 119 Wash.2d 390, 399, 832 P.2d 481 (1992); State v. Grewe, 117 Wash.2d 211, 215-16, 813 P.2d 1238 (1991); State v. Nordby, 106 Wash.2d 514, 518, 723 P.2d 1117 (1986). In contrast, whether an aggravating factor is present in a particular case, in other words whether a stated reason is supported by the record, is a factual determination. Nordby, 106 Wash.2d at 517-18, 723 P.2d 1117; see also Cardenas, 129 Wash.2d at 5, 914 P.2d 57 (applying a clearly erroneous standard to this question); State v. Fisher, 108 Wash.2d 419, 423, 739 P.2d 683 (1987); State v. Woody, 48 Wash.App. 772, 776, 742 P.2d 133 (1987). Thus, whether a particular aggravating factor is supported by the record is a question of fact, while the question of whether the found factors are sufficiently substantial and compelling is a matter of law.
[4] The State points to State v. Christensen, 153 Wash.2d 186, 192, 102 P.3d 789 (2004), in which we decided that a conversation on a cordless phone was private as a matter of law. We did so, even though the question of whether a particular communication is private is generally treated as a question of fact, because the underlying facts were undisputed. Id. However, applying the Christensen approach in this case would conflict with the analysis set forth in Hughes.
[5] The sentencing judge gave two additional reasons for imposing Suleiman's exceptional sentence. He concluded (1) that the injury to Kim Dwyer was far greater than that contemplated by the legislature in setting the injury element of assault at "substantial bodily injury," and Suleiman knew or should have been aware of the extreme risk to his passengers, and (2) that Suleiman's conduct was far more egregious than the typical vehicular assault, and the goals of the SRA would not be served by a standard range sentence. CP at 68-69. Suleiman challenged these bases at the Court of Appeals, but because that court concluded that the particular vulnerability factor supported Suleiman's exceptional sentence, it did not address these challenges. Suleiman at *3, 2004 Wash.App. LEXIS 1147, at *10. While the State does not argue that these conclusions constitute valid alternative means for upholding the exceptional sentence, we note that they suffer from the same infirmity as the particular vulnerability factor in this case.

With regard to the first additional factor, even assuming a trial court could conclude as a matter of law what the legislature intended when it used the term "substantial bodily injury," the determination of whether Kim Dwyer's injuries were more severe than what the legislature contemplated necessarily involves a factual comparison. Moreover, in the Hughes case, defendant Hughes' exceptional sentence was supported by a similar aggravating factor. Hughes, 154 Wash.2d at 129, 110 P.3d 192 (The harm inflicted by the defendant was severe and not contemplated by the legislature in setting the standard range.). Even though the Hughes trial court had held that each aggravating factor could support the exceptional sentence, id. at 130, 110 P.3d 192, we did not conclude that this factor survived the Blakely challenge in that case. Id. at 142, 110 P.3d 192.
Similarly, a determination of whether this crime was far more egregious than the typical vehicular assault also necessarily requires a factual comparison. Again, Hughes' exceptional sentence was supported by a similar factor, yet that factor did not save the exceptional sentence in Hughes. Id. at 129, 142, 110 P.3d 192 (Hughes' theft was distinguishable from other thefts in the first degree). In sum, we conclude that all of the factors supporting Suleiman's exceptional sentence involved some judicial fact finding.
[1] United States v. Ameline, 376 F.3d 967, 973 (9th Cir.2004).
[2] The Supreme Court simply assumed that "questions of fact" (as opposed to legal judgments) are "self-evident" and did not define them in Blakely. Paul F. Kirgis, The Right to a Jury Decision on Sentencing Facts After Booker: What the Seventh Amendment Can Teach the Sixth, 39 GA. L. REV. 895, 948 (2005).
[3] Furthermore, the United States Supreme Court itself recently approved of a judge making a legal conclusion based on a defendant's factual admissions in order to enhance a sentence under the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(3). In Shepard v. United States, 544 U.S. 13, 25, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), the court held that a judge may determine whether a prior, admitted burglary qualifies as a "generic" burglary (involving entry into a building, not a vehicle) under the ACCA, based on the judge's examination of the charging document as well as any written plea agreement, colloquy transcript or other record of the defendant confirming the "factual basis for the plea." It follows that, if a judge can conclude from a plea agreement that an admitted burglary qualifies as a generic burglary for ACCA sentencing purposes, the judge in this case properly could conclude from Suleiman's plea agreement that his admitted vehicular assault qualified as an unusually egregious and harmful crime for former RCW 9.94A.535 sentencing purposes.
[4] For example, the majority says that whether "the record" (the defendant's stipulation) supports the conclusion that the victim was particularly vulnerable is a "factual conclusion" for the jury to make. Id.
[5] See also State v. Solberg, 122 Wash.2d 688, 705, 861 P.2d 460 (1993) (Where factual findings are supported by the record and are the reason for an exceptional sentence, it is for the judge to decide if the facts justify an exceptional sentence.).