# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59268-1-II |
| Respondent, | |
| v. | |
| RONALD JAY BIANCHI, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, P.J. – Ronald Bianchi appeals his sentence imposed after a 2023 resentencing hearing for multiple convictions related to a 1997 bank robbery and subsequent police chase during which his accomplices fired multiple shots at pursuing officers. His convictions included three counts of attempted first degree murder, two counts of first degree robbery, second degree possession of stolen property, second degree assault, and second degree malicious explosion.

Following a retrial, the trial court sentenced Bianchi to 1,131 months in confinement, which represented the high end of the standard sentencing range for the three attempted murder convictions plus a 60 month exceptional sentence. An appellate court vacated a second degree possession of stolen property conviction and remanded for resentencing. At resentencing, a different judge imposed the same 1,131 month sentence.

Bianchi argues that (1) the trial court failed to give meaningful consideration to his request for an exceptional sentence below the standard range based on mitigating circumstances,

(2) the court miscalculated his sentence by adding 60 months to the standard range sentence without properly imposing an exceptional sentence, and (3) imposition of the exceptional sentence was unconstitutional because it was based on impermissible judicial fact-finding. In his statement of additional grounds (SAG), Bianchi also challenges the imposition of a 36 month community custody term, arguing that the term exceeds the statutory limit of 24 months.

We hold that (1) the trial court adequately considered Bianchi's request for an exceptional sentence below the standard range; (2) the judgment and sentence was deficient regarding the exceptional sentence, and we remand for the trial court to cure the deficiencies; (3) imposition of the exceptional sentence was not unconstitutional; and (4) as the State concedes, Bianchi's community custody term must be reduced to 24 months.

Accordingly, we affirm Bianchi's sentence, but we remand for the trial court to cure the deficiencies in the judgment and sentence regarding the exceptional sentence and to reduce the community custody term to 24 months.

## FACTS

In October 1997, Bianchi along with two accomplices robbed a bank in Vancouver, Washington. During the robbery, they held bank employees and customers at gunpoint and stole several thousand dollars in cash before fleeing in stolen vehicles.

Law enforcement pursued the suspects in a high-speed chase through residential neighborhoods. The suspects fired multiple bullets from a shotgun and an automatic weapon at pursuing officers, striking patrol cars, houses, and other vehicles. Three officers came under heavy gunfire during the chase. The pursuit ended when the suspects' vehicle crashed into a tree. Bianchi fled into a nearby ravine while his accomplices exchanged gunfire with officers, resulting in the deaths of both accomplices. Bianchi was 25 years old at the time.

In 1998, Bianchi pleaded guilty to multiple charges and was sentenced to 864 months in confinement and 24 months of community custody placement. His convictions included three counts of attempted first degree felony murder.

In 2008, the Supreme Court invalidated the crime of attempted felony murder, leading the Court of Appeals to vacate the three attempted first degree felony murder convictions. The trial court subsequently allowed Bianchi to withdraw his guilty plea.

In 2019, Bianchi was retried and again was convicted of multiple offenses, including three counts of attempted first degree murder and two counts of second degree possession of stolen property. The trial court imposed a sentence of 1,131 months, which was at the top of the standard range for the three attempted murder convictions plus a 60 month exceptional sentence for aggravating factors found by the jury. On direct appeal, Division One of this court vacated one of Bianchi's second degree possession of stolen property convictions and remanded for resentencing. *State v. Bianchi*, No. 83338-3-I (Wash. Ct. App. Apr. 4, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/833383.pdf. The holding only affected the offender score on the other second degree possession of stolen property conviction, and did not affect the offender scores for the attempted murder convictions.

At his June 2023 resentencing, Bianchi requested a mitigated sentence of 30.68 years, emphasizing his traumatic upbringing and his significant rehabilitation during incarceration. Evidence he presented included a score of 10 out of 10 on the Adverse Childhood Experiences test, reflecting severe trauma throughout his youth. Bianchi's upbringing was characterized by learning disorders, illiteracy, chronic abuse, neglect, and exposure to criminality, including being introduced to cocaine by his parents at the age of eight, and using methamphetamine by age 15.

3

In addition, he suffered physical and sexual abuse from family members and peers and endured a transient lifestyle marked by poverty and instability.

Despite these challenges, Bianchi achieved significant personal growth while incarcerated. He obtained his GED, completed multiple vocational certifications, developed a business plan, maintained long-term sobriety, established a meaningful relationship with his daughter and mother, and was married. Psychological evaluations highlighted his remarkable rehabilitation, with experts noting his transformation despite the profound disadvantages of his upbringing.

The trial court stated that its typical practice was to "start with what has already been sentenced by the sentencing court and to give a certain amount of deference to that, subject to the legal standards and subject to the briefing and the arguments by the parties." Rep. of Proc. (RP) at 16.

The trial court reviewed materials submitted by both Bianchi and the State, heard argument from counsel, heard statements from an expert who prepared a report on Bianchi's upbringing, and heard from Bianchi himself. The trial court noted Bianchi's arguments regarding his youthfulness and childhood trauma and his rehabilitation. The court stated, "I consider all these things and I weigh them against the nature of the crime and the conviction." RP at 16. The court then highlighted the extensive planning and execution of the offenses and their devastating impact on victims and law enforcement.

The court concluded,

> I've given this case quite a bit of thought. And, again, my inclination and I think it's judicially appropriate and judicially conservative is to give significant deference to the sentencing Court. I do appreciate the defendant's arguments on all of the grounds that I have recited and as briefed in defendant's materials. I'm not persuaded to change the sentence from the original sentencing court.

4

RP at 17. The trial court judge imposed the same 1,131 month sentence that the prior judge had imposed.

On June 16, 2023, the trial court entered an amended judgment and sentence. The court sentenced Bianchi to 471 months on one of the attempted first degree murder convictions and 300 months each on the other two attempted first degree murder convictions. The sentences were at the top of the standard range, including firearm enhancements. Those sentences ran consecutively, with the other sentences running concurrently. However, the court stated that the number of months in total confinement was 1,131 months, when the sentences that ran consecutively only totaled 1,071 months (471 + 300 + 300).

The trial court found substantial and compelling reasons to impose an exceptional sentence above the standard range for the three attempted first degree murder convictions, based on aggravating factors found by the jury. However, the judgment and sentence did not expressly refer to any sentence above the standard range other than stating that the total sentence was 60 months more than the total of the three sentences for attempted murder.

On September 21, 2023, the trial court entered an order correcting Bianchi's judgment and sentence. The order stated that the judgment and sentence "shall be amended to reflect that to the sentence imposed is an additional 60 months of total confinement for the aggravator found by the jury. The total confinement order is 1,131 months." Clerk's Papers at 315. Bianchi's defense counsel signed as approving the form of the order. Although the case had been appealed, the trial court did not obtain permission from this court before entering the order.

Bianchi appeals his sentence and the duration of his community custody.

ANALYSIS

A.    CONSIDERATION OF REQUEST FOR EXCEPTIONAL SENTENCE DOWNWARD

Bianchi argues that the trial court failed to meaningfully consider his request for an exceptional sentence below the standard range based on mitigating circumstances when imposing the 1,131 month sentence.  We disagree.

1.    Legal Principles

Under RCW 9.94A.535, the trial court "may impose a sentence outside the standard sentence range for an offense if it finds . . . substantial and compelling reasons justifying an exceptional sentence."  Under RCW 9.94A.535(1), the court must find that a preponderance of the evidence establishes mitigating circumstances justifying a sentence below the standard range.  RCW 9.94A.535(1) contains an illustrative, but not exclusive, list of mitigating circumstances that could justify an exceptional sentence downward.

Every defendant is entitled to ask the trial court to consider an exceptional sentence below the standard range and to have the exceptional sentence actually considered.  *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005).  But our review is limited to circumstances where the trial court " 'refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range.' "  *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017) (quoting *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002)).  A trial court has exercised its discretion when it "has considered the facts and has concluded that there is no basis for an exceptional sentence."  *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

2. Analysis

First, Bianchi argues that the court erred in merely deferring to the prior judge's 1,131 sentence rather than engaging in a de novo analysis. Bianchi relies on *State v. Dunbar*, in which Division Three of this court held that any resentencing on remand is de novo. 27 Wn. App. 2d 238, 244, 532 P.3d 652 (2023). The court stated, "[t]he resentencing judge may not rely on a previous court's sentence determination and fail to conduct its own independent review." *Id.* at 249. However, as long as the resentencing court exercises independent discretion, the court may consider rulings by another judge at the earlier sentencing. *Id.* at 244. And "[d]uring resentencing, the trial court may impose the identical sentence . . . within its discretion." *Id.* at 249.

Assuming without deciding that a full, de novo resentencing was required here, we conclude that the trial court did not err. The trial court did state that it would "give significant deference to the sentencing Court." RP at 17. However, earlier the court stated that this deference was "subject to the legal standards and subject to the briefing and the arguments by the parties." RP at 16. And the court stated, "I do appreciate the defendant's arguments on all of the grounds that I have recited and as briefed in defendant's materials." RP at 17.

As noted above, even under *Dunbar* the trial court was allowed to consider the prior sentence. 27 Wn. App. 2d at 244. Further, the court never stated that it was bound by the prior judge's sentence. Instead, the court considered the materials Bianchi submitted, heard argument from counsel, and explained the reasoning behind the sentence imposed. The fact that the court imposed the same sentence as before does not mean that the court failed to exercise discretion. We reject Bianchi's argument.

Second, Bianchi argues that the trial court failed to consider his rehabilitation while in prison. A trial court has discretion to consider post-conviction rehabilitation at resentencing. *Dunbar*, 27 Wn. App. 2d at 247. However, a court is not required to consider rehabilitation. The Supreme Court stated, "While a resentencing court may certainly exercise its discretion to consider evidence of subsequent rehabilitation where such evidence is relevant to the circumstances of the crime or the offender's culpability, we decline to hold that the court is constitutionally required to consider such evidence in every case." *State v. Ramos*, 187 Wn.2d 420, 449, 387 P.3d 650 (2017).

Here, the trial court did consider Bianchi's rehabilitation argument. The court stated, "The other gist of the argument is the passage of time and significant rehabilitation. And, there's extensive materials on that. That this is a life that is still redeemable, post custody and the Department of Corrections." RP at 16. However, the court decided that Bianchi's rehabilitation did not warrant an exceptional sentence downward. That decision was within the court's discretion. We reject Bianchi's argument.

Third, Bianchi argues that the trial court failed to consider the mitigating qualities of his youthfulness at the time of the crimes. Bianchi was 25 years old when he committed the offenses that lead to his convictions. Youthfulness is a mitigating factor that may justify an exceptional sentence below statutory guidelines, even when the defendant is a legal adult. *State v. O'Dell*, 183 Wn.2d 680, 689, 358 P.3d 359 (2015). However, "age is not a per se mitigating factor automatically entitling every youthful defendant to an exceptional sentence." *Id.* at 695.

Here, the trial court did consider Bianchi's youthfulness argument. The court summarized Bianchi's argument:

> [H]e was young at the time, 25 years old. That is – that's not the kind of youth that
> I think I have in mind when you're talking about an adolescent. I know there's

arguments about child – childhood trauma, etcetera and I appreciate those and recognize those. But, I have to weigh those for the interest of the community. So, youth of the defendant at the time of the crime would be one argument.

RP at 16. However, the court decided that Bianchi's youthfulness did not warrant an exceptional sentence downward. That decision was within the court's discretion. We reject Bianchi's argument.

Fourth, Bianchi argues that the trial court should have found a mitigating factor under RCW 9.94A.535(1)(g). RCW 9.94A.535(1)(g) states the following mitigating factor that can support an exceptional sentence below the standard range: "The operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A.010." Whether or not to impose an exceptional sentence downward based on RCW 9.94A.535(1)(g) is within the trial court's discretion. *State v. McGill*, 112 Wn. App. 95, 99, 47 P.3d 173 (2002).

Here, the trial court did not expressly address RCW 9.94A.535(1)(g) in its oral ruling. However, the court noted that it had read all the materials submitted by the parties. And the court stated, "I do appreciate the defendant's arguments on all of the grounds that I have recited and as briefed in defendant's materials." RP at 17. Bianchi argued in his materials that RCW 9.94A.535(1)(g) provided a basis for an exceptional sentence downward. There is no indication in the record that the trial court failed to recognize that it had the authority to impose an exceptional sentence downward on this basis. Instead, the trial court determined in the exercise of its discretion that an exceptional sentence below the standard range was not appropriate. We reject Bianchi's argument.

We hold that the trial court adequately considered Bianchi's request for an exceptional sentence below the standard range based on mitigating circumstances.

9

B.      IMPOSITION OF EXCEPTIONAL SENTENCE

Bianchi argues that the trial court did not properly impose the 60 month exceptional sentence in the judgment and sentence. We agree.

Bianchi argues that the 60 month exceptional sentence must be vacated because (1) the judgment and sentence did not reflect the imposition of such a sentence and (2) the 60 months was not added to any specific conviction. We agree that the judgment and sentence was deficient, but we conclude that the trial court made clerical errors that can be corrected on remand.

1.      Failure to Include Exceptional Sentence in List of Sentences

The trial court failed to expressly reflect in the judgment and sentence that it was imposing a 60 month exceptional sentence for the attempted first degree murder convictions. The court found substantial and compelling reasons to impose an exceptional sentence based on the jury finding of aggravating factors. But the judgment and sentence only showed sentences at the top of the standard range for the three attempted murder convictions, which totaled 1,071 months. On the other hand, the court stated in its oral ruling that it was imposing a sentence of 1,131 months. And the judgment and sentence showed a total confinement of 1,131 months – 60 months more than the three consecutive standard range sentences.

The State relies on the order correcting the judgment and sentence that was entered after this appeal was filed. Under CrR 7.8(a), clerical mistakes in a judgment and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or upon the motion of any party. But CrR 7.8(a) also states that if review has been accepted by an appellate court, a clerical mistake can be corrected pursuant to RAP 7.2(e). Under RAP 7.2(e), regarding the modification of a decision, "[i]f the trial court determination will change a decision then

being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision."

Here, the "decision" we are reviewing is entry of the judgment and sentence. And the trial court's correction order changed the judgment and sentence. Therefore, the trial court was required to obtain permission from this court before entering the correction order.

Because the State and the trial court did not comply with RAP 7.2(e), we will disregard the order correcting the judgment and sentence. And without that order, we agree that the judgment and sentence was deficient because it did not expressly impose the exceptional 60 months in the list of sentences for the three attempted first degree murder convictions.

2.    Nonspecific Exceptional Sentence

Bianchi argues that the judgment and sentence also was deficient because the 60 month exceptional sentence was not allocated to any specific conviction. Bianchi relies on RCW 9.94A.535, which states, "The court may impose a sentence outside the standard sentence range *for an offense* if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." (Emphasis added.) He claims that the "for an offense" language allows the trial court to impose an exceptional sentence only for specific offenses, not a group of offenses.

The State does not address this argument on the merits. Instead, in a footnote, the State claims that Bianchi did not provide meaningful argument or authority on this issue. We disagree. Bianchi cited authority – RCW 9.94A.535 – and provided an argument based on that authority.

In the absence of any contrary argument from the State, we conclude that the trial court erred in not allocating the 60 month exceptional sentence to a specific conviction or convictions.

11

3.    Correcting Clerical Mistakes

Bianchi argues that the remedy for the deficiencies in the judgment and sentence is vacation of the exceptional sentence. We disagree.

We conclude that the trial court's failure to show the 60 month exceptional sentence in the judgment and sentence was a clerical mistake. The trial court's clear intention – stated in the judgment and sentence – was to impose an exceptional sentence, and the 1,131 month sentence referenced in the judgment and sentence was 60 months more than the consecutive standard ranges for the attempted murder convictions. Therefore, the trial court can correct this mistake with our permission.

Similarly, we conclude that the trial court's failure to allocate the exceptional sentence to a specific conviction was a clerical mistake. The trial court's clear intention was to impose a 60 month exceptional sentence, and the failure to allocate the 60 months to a specific conviction was an oversight. Therefore, the trial court can correct this mistake with this court's permission.

We remand for the trial court to amend the judgment and sentence provide for a 60 month exceptional sentence and to allocate the 60 month exceptional sentence to a specific conviction or to divide the 60 months among more than one conviction.

C.    CONSTITUTIONALITY OF EXCEPTIONAL SENTENCE

Bianchi argues that the trial court's imposition of an exceptional sentence based on judicial fact-finding violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution. We disagree.

1.    Legal Principles

Under RCW 9.94A.535 and RCW 9.94A.537, a trial court may impose an exceptional sentence if it finds there are "substantial and compelling reasons justifying an exceptional

sentence," provided that the aggravating factors have been found by a jury beyond a reasonable doubt. Specifically, RCW 9.94A.535(3)(v) permits an exceptional sentence if "[t]he offense was committed against a law enforcement officer who was performing his or her official duties at the time of the offense, the offender knew that the victim was a law enforcement officer, and the victim's status as a law enforcement officer is not an element of the offense." The jury must determine the existence of aggravating factors, but the trial court determines whether those factors warrant an exceptional sentence. *State v. Suleiman*, 158 Wn.2d 280, 290-91, 143 P.3d 795 (2006).

The Sixth and Fourteenth Amendments guarantee a defendant the right to a jury trial for every fact that increases the penalty for a crime beyond the statutory maximum. *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Id.* (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

However, Division One of this court in *State v. Sage* held that determinations that involve applying the law to facts already found by the jury are legal conclusions, not factual findings, and do not require additional jury consideration. 1 Wn. App. 2d 685, 708-10, 407 P.3d 359 (2017). The court stated,

> Washington cases recognize that once the jury by special verdict makes the factual determination whether aggravating circumstances have been proved beyond a reasonable doubt, "[t]he trial judge [is] left only with the legal conclusion of whether the facts alleged and found were sufficiently substantial and compelling to warrant an exceptional sentence."

*Id.* at 708 (alterations in original) (quoting *Suleiman*, 158 Wn.2d at 290-91).

Washington courts have emphasized that the judicial role in determining whether a sentence is justified under RCW 9.94A.535 involves applying the law to facts already found by the jury. This approach does not violate constitutional protections. *Suleiman*, 158 Wn.2d at 290-91; *Sage*, 1 Wn. App. 2d at 708-10.

2.    Analysis

Bianchi challenges the trial court's determination that the jury's findings provided "substantial and compelling reasons" for an exceptional sentence, arguing that this amounted to impermissible judicial fact-finding in violation of his constitutional rights. He relies on *Hurst v. Florida*, 577 U.S. 92, 97-99, 136 S. Ct. 616, 193 L. Ed. 2d 504 (2016), to argue that any determination leading to an increased sentence should have been submitted to the jury. In *Hurst,* the Supreme Court addressed Florida's death penalty sentencing scheme for capital felonies, in which the jury provided a recommendation of a life or death sentence without stating the factual basis of its recommendation. *Id.* at 95-96. Although the trial court would consider the jury's recommendation, the court exercised independent judgment to determine whether a death sentence was justified. *Id.* The Court held that Florida's death penalty sentencing scheme was unconstitutional because it allowed judges, rather than juries, to independently determine the existence of aggravating circumstances necessary to impose a death sentence. *Id.* at 98-100.

However, Washington's sentencing scheme is distinguishable. Unlike Florida's law, which required judges to find aggravating factors and weigh them against mitigation, Washington requires a jury to find the existence of aggravating factors beyond a reasonable doubt before a court can consider whether those factors are substantial and compelling. RCW 9.94A.535; RCW 9.94A.537(6). The trial court has no role in the jury's determination. Only

14

once the jury has made its factual findings can the trial court determine as a matter of law that those findings justify an exceptional sentence. *See Sage*, 1 Wn. App. 2d at 708-09.

Bianchi also argues that *Sage* was wrongly decided. We disagree. *Sage* relied on and quoted from our Supreme Court's decision in *Suleiman*, 158 Wn.2d at 290-91 & 291 n.3. *Sage*, 1 Wn. App. 2d at 708 & n.80. And our Supreme Court denied review in *Sage*. 191 Wn.2d 1007 (2018).

Here, the trial court complied with constitutional and statutory requirements. The jury found the existence of aggravating factors beyond a reasonable doubt, specifically that the offenses were committed against law enforcement officers performing official duties. RCW 9.94A.535(3)(v). The trial court then determined that these findings constituted "substantial and compelling reasons" to impose an exceptional sentence, as required by RCW 9.94A.535 and RCW 9.94A.537(6). This determination was a legal conclusion rather than a factual determination and therefore was appropriately made by the court. *Sage*, 1 Wn. App. 2d at 708.

We hold that the trial court's imposition of an exceptional sentence did not violate Bianchi's constitutional rights.

D.      SAG CLAIM

Bianchi argues, and the State concedes, that the trial court improperly imposed a 36 month term of community custody, exceeding the statutory maximum of 24 months authorized under RCW 9.94A.728 at the time of his crime in 1997 and original judgment and sentence in 1998. Former RCW 9.94A.150 (1981). We agree.

The trial court sentenced Bianchi to 36 months of community custody under RCW 9.94A.701(1), which mandates that term for a serious violent offense. However, RCW 9.94B.050(2)(b) states that the term of community custody is 24 months for "[a] serious violent

offense other than a sex offense committed on or after July 1, 1990, but before July 1, 2000."

RCW 9.94B.010(2) states that chapter 9.94B RCW supplements chapter 9.94A RCW.

Bianchi committed his offenses in 1997.  Therefore, RCW 9.94B.050(2)(a) applied to his sentence and the correct term of community custody was 24 months.  We remand for the trial court to correct the judgment and sentence.

CONCLUSION

We affirm Bianchi's sentence, but we remand for the trial court to cure the deficiencies in the judgment and sentence regarding the exceptional sentence and to reduce the community custody term to 24 months.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
PRICE, J.

_____
CHE, J.