# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57961-8-II |
| Respondent, | |
| v. | |
| JAMES ELLIS PARRILL, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — In March 2023, following a bench trial, James Parrill was found guilty of several sex crimes committed against his then 14-year-old biological daughter, H.P. Parrill was sentenced to a 720-month exceptional minimum term based on aggravators found by the judge at trial. Parrill appeals, arguing (1) that he did not waive his right to a jury trial regarding the aggravating factors; (2) that the trial court should not have ruled there were substantial and compelling reasons for imposing an exceptional sentence as required under the Sentencing Reform Act of 1981 (SRA) because the "substantial and compelling reasons" determination is a factual question that should be put to a jury and that there was no evidence presented of "substantial and compelling reasons"; and (3) that imposition of an exceptional sentence when Parrill is already serving the possibility of life in prison is not statutorily permitted and the court failed to separately describe substantial and compelling reasons besides the aggravators; and (4) that the court erred when imposing the victim penalty assessment (VPA) and DNA legal financial obligations.

The State responds that (1) Parrill's written and oral waivers of his right to a jury trial are valid and supported by the record and that the waivers were effective to waive his right to jury trial for the underlying crimes and the aggravators  Additionally, the State contends (2) that the trial court's substantial and compelling reasons conclusion is a legal determination, not a fact question, and further, that the aggravating factors support the "substantial and compelling reasons" conclusion; (3) that, overall, the exceptional minimum term is supported by the aggravating factors and is permitted by statute.  Finally, the State does not object to the VPA and DNA fees being stricken.

We agree with the State and hold that Parrill validly waived his right to a jury trial on the aggravating factors because the record clearly shows he did so via his written and oral waivers. We also hold that substantial and compelling reasons support the trial court's imposition of an exceptional sentence, as its finding of even one aggravating factor is sufficient.  We further hold that the imposition of an exceptional minimum term sentence when one is sentenced to a statutory maximum sentence of life in prison is permitted by statute.  Finally, we remand with instructions to strike the VPA and DNA fees.

FACTS

I.    BACKGROUND

On December 2, 2022, the State charged Parrill with eight counts of sex crimes committed against his 14-year-old daughter, H.P.  The State offered Parrill a plea deal, which he declined.  At the time of denying the offer, his attorney acknowledged Parrill was aware that declining the offer would lead to the possibility of the State adding additional counts or enhancements.

The State filed a total of three amended informations. The second amended information added the aggravators at issue here. The third amended information maintained the same aggravating factors and changed the charges only by clarifying the time period for the crime dates alleged.

The second amended information, filed on January 19, 2023, listed charges against Parrill as follows: two counts of rape in the second degree or in the alternative rape of a child in the third degree, two counts of rape of a child in the third degree, two counts of incest in the first degree, two counts of indecent liberties or in the alternative child molestation in the third degree, and two counts of incest in the second degree. And for the first time counts I, II, V, VI, VII, and VIII listed the following associated aggravating factors: (1) the defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance; (2) the current offense was part of an ongoing pattern of sexual abuse of the same victim under the age of 18 years manifested by multiple incidents over a prolonged period of time; (3) the defendant used his position of trust to facilitate the commission of the current offense; and (4) that the victim was under the age of 15 at the time of the offense.

A week later, at arraignment, Parrill's attorney waived formal reading of the second amended information and entered not guilty pleas to all counts.

## II.    TRIAL

During a pretrial hearing on January 30, defense counsel stated that he had the opportunity to talk with Parrill and that Parrill had indicated that he would like to waive his right to a jury trial and opt for a bench trial. Defense added, "I explained what the differences are. We briefly talked about prejudices from the general public about cases like this." Rep. of Proc. (RP) (Jan. 30, 2023)

3

at 9. Counsel then requested the court inquire further with Parrill. The following exchange took place:

> THE COURT: All right. Mr. Parrill, what's your position on what [counsel] just told me?
> Mr. PARRILL: I would like to try to go for the bench trial.
> THE COURT: Tell me why that is.
> MR. PARRILL: Because some people have a set mindset, and you can't change their mind from that.
> THE COURT: All right. So you believe that a jury might have some preconceived ideas about a case like this?
> MR. PARRILL: I would believe so, yes, sir.
> THE COURT: And you understand that part of the process of a jury trial is that you would have an opportunity to see those jurors and listen to what they say, and your attorney would have an opportunity to ask them questions about their— any biases or prejudices that they might have?
> We have a jury selection process where the people would all be in this courtroom and both attorneys could have a chance to ask them questions about their notions, their background, their history, and their many biases or prejudices that they might have about a case such as this. Do you understand that?
> MR. PARRILL: I understand.
> THE COURT: Is that a yes?
> MR. PARRILL: Yes.
> . . . .
> THE COURT: And is it something that you and your attorney did talk about, this right to a jury trial and the advantages and disadvantages of waiving that right?
> MR. PARRILL: Yes.
> THE COURT: And so you're still wanting to proceed without a jury and with a bench?
> MR. PARRILL: Yes, sir.
> THE COURT: And you understand that a collective knowledge of any twelve citizens is vastly superior to that of any judge, even me? Especially me.
> MR. PARRILL: I don't know. I don't think that's—yes, I understand.

RP (Jan. 30, 2023) at 9-11. The court then noted it would be best to have Parrill's waiver in writing. The court asked Parrill's attorney if he had discussed waiver with Parrill. The court inquired of Parrill's attorney to determine if Parrill understood the differences between a jury and bench trial. Parrill's attorney answered in the affirmative, and Parrill agreed.

4

The court asked Parrill again if anything had changed his decision regarding waiver. Parrill conveyed that nothing had changed his decision. Parrill was asked again whether he had any second thoughts about his decision, to which he responded, "I do not." RP (Jan. 30, 2023) at 23. The written waiver was signed by all parties and accepted by the court. Accordingly, the court stated, "based on my acceptance of this jury waiver, we won't be calling in a jury tomorrow." RP (Jan. 30, 2023) at 23. The next day, Parrill's bench trial began.

Ultimately, the court found Parrill guilty of all counts. The court also found beyond a reasonable doubt that the aggravating factors applied to "each and every guilty verdict for which they [were] alleged." RP (Feb. 1, 2023) at 339. The court found the following aggravators: (1) that there was an ongoing pattern of sexual abuse over a prolonged period of time, (2) that Parrill used his position of trust to facilitate the commission of the crimes, and (3) that H.P. was under the age of 15 at the time of the offenses. The court did not find the fourth aggravator alleged by the State: that H.P. was a particularly vulnerable victim beyond a reasonable doubt.

On March 8, 2023, the court concluded that substantial and compelling reasons justified an exceptional sentence and entered an exceptional minimum term of 720 months to a maximum term of life.[1] The sentence is an ISRB[2] sentence. The court stated that "any one of [the] aggravating

---

[1] Parrill was also sentenced to determinate sentences on his other charges, but they are not addressed here because he raises issues related to only his sentence on the rape in the second degree charge.

[2] ISRB is an acronym for Indeterminate Sentence Review Board. RCW 9.95.001; WASH. DEPT. OF CORRECTIONS, *Hearings & Sentencing, Indeterminate Sentence Review Board (ISRB)*, https://www.doc.wa.gov/corrections/isrb/default.htm (last visited May 6, 2024). An ISRB sentence is an indeterminate sentence wherein the sentencing court orders a minimum term. After the minimum term, the defendant is eligible to go before the ISRB to be considered for release. RCW 9.95.110. A defendant may or may not be released. *Id.* If not released, the defendant may be imprisoned for life.

factors alone would support" its decision. RP (Mar. 8, 2023) at 17. The court also found Parrill indigent. However, the court imposed a $500 VPA and $100 DNA fee. Parrill appeals.

ANALYSIS

I.   WAIVER OF JURY TRIAL

A.   Legal Principles

An appellant may argue for the first time on appeal that the record is insufficient to satisfy the constitutional requirements for waiver of the right to a jury trial. *State v. Cham*, 165 Wn. App. 438, 446-47, 267 P.3d 528 (2011). "We review the sufficiency of the record to establish a valid waiver de novo." *Id*. at 447.

A "defendant has the right to a jury trial on any aggravating factor that supports an exceptional sentence, except the fact of a prior conviction." *Id.* at 446. With a few exceptions, RCW 9.94A.535(3) provides an exclusive list of aggravating factors that can support a sentence above the standard range.

For a waiver of the right to a jury trial to be valid, the "record must adequately establish that" the waiver was knowing, intelligent, and voluntary. *State v. Benitez*, 175 Wn. App. 116, 128, 302 P.3d 877 (2013). "The State bears the burden of establishing a valid waiver, and absent a record to the contrary," we indulge "in every reasonable presumption against waiver." *Cham*, 165 Wn. App at 447. Where a defendant waives their right to a jury trial, the trial court does not need to engage in a colloquy or give "'on-the-record advice as to the consequences of [the] waiver.'" *Id.* (quoting *State v. Stegall*, 124 Wn.2d 719, 725, 881 P.2d 979 (1994)). A record sufficiently demonstrates a waiver's validity if it "'includes either a written waiver signed by the defendant, a personal expression by the defendant of an intent to waive, or an informed acquiescence.'" *State*

*v. Trebilcock*, 184 Wn. App. 619, 632, 341 P.3d 1004 (2014) (quoting *Cham*, 165 Wn. App. at 448).

In *Trebilcock*, this court held that during a bench trial, a defendant validly waived her right to a jury trial on aggravating factors although she waived before the State amended the charging document adding aggravating factors. 184 Wn. App. at 632-33. This court reasoned that because the defendant signed a written waiver; her attorney stated that the parties had discussed the decision to waive for months; the defendant stated on the record that she understood the right she was waiving; the attorney did not move to rescind her waiver following the addition of the aggravating factors, and because defense counsel indicated multiple times at trial and sentencing that the defendant understood and agreed to the judge's decision on the aggravating factors, her waiver was valid. *Id.* Consequently, the court held that when a defendant waives jury trial, that waiver is for all purposes *Id.* at 632-33. Therefore, when a defendant waives jury trial, they also waive the right to a jury on any aggravating factors *Id.* at 631-34.

B.      Analysis

As an initial matter, Parrill concedes that he waived his right to a jury trial. However, he argues that he did not waive his right to a jury trial *regarding the aggravating factors* because he did not know that he was entitled to a jury trial on the factors nor did the court inform him of that right. Parrill argues that in order for his waiver to be effective as to the aggravating factors, the court instead needed to obtain a separate waiver of his right to a jury trial on the aggravating factors.

The State responds that Parrill's written and oral waivers on January 30 are effective to waive a jury trial not only as to the charges, but as to the aggravating factors as well. This is so, it argues, because Parrill waived the jury trial after not objecting to the second amended information, which is the information wherein the State added the aggravating factors. We agree with the State.

Here, the record is clear that the State filed a second amended information, adding the aggravators on January 19, 2023. Therefore, by the time Parrill and his attorney waived a jury trial on January 30, Parrill was well aware that the State was pursuing aggravating factors. Consequently, as the case's procedural history clearly establishes, when Parrill waived, he did so knowing he was waiving a jury trial for not only the underlying crimes but also the aggravating factors contained in the charging document.

Additionally, following a lengthy discussion between the court and Parrill and an oral decision to waive a jury trial, Parrill signed a written waiver form. Parrill never moved to rescind his waiver. Accordingly, we conclude that just as in *Trebilcock*, Parrill's waiver was a wavier "for all purposes," including "the right to have a jury decide any aggravating factor that supports an exceptional sentence." 184 Wn. App. at 632.[3]

II.   IMPOSITION OF AN EXCEPTIONAL SENTENCE PURSUANT TO THE SRA

   A.   The Requirement That There Be Substantial and Compelling Reasons Justifying an Exceptional Sentence Is a Conclusion of Law Not a Question of Fact.

      1.   Legal Principles

Whether the imposition of an exceptional sentence violates the Sixth and Fourteenth Amendments to the United State Constitution is a question of law that we review de novo. *State v. Alvarado*, 164 Wn.2d 556, 563, 192 P.3d 345 (2008). The Sixth Amendment provides criminal

---

[3] Parrill also argues that we should not imply that he waived jury under the doctrine of implied waiver recognized in *Cham*. However, given our conclusion above we need not reach this.

defendants with a right to a jury trial. This right, in conjunction with the due process clause of the Fourteenth Amendment, requires that each element of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 104, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) (plurality opinion).

A trial court may impose an exceptional sentence outside the standard range if it concludes that "there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. Whenever the court imposes an exceptional sentence, it must set forth the reasons for its decision in written findings of fact and conclusions of law. *Id*. However, "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

In other words, "any fact that 'expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict' is an 'element' that must be submitted to the jury." *Hurst v. Florida*, 577 U.S. 92, 97, 136 S. Ct. 616, 193 L. Ed. 2d 504 (2016) (alteration in original) (quoting *Apprendi*, 530 U.S. at 494).

On appeal, an exceptional sentence may be upheld "even where all but one of the trial court's reasons for the sentence have been overturned." *State v. Gaines*, 122 Wn.2d 502, 512, 859 P.2d 36 (1993).

      2.     Analysis

Parrill asserts error because, he argues, the trial court should have required the State prove substantial and compelling reasons beyond a reasonable doubt to a jury not a judge, before imposing the exceptional sentence.

Parrill relies on *Hurst* for the proposition that the Washington sentencing scheme under the SRA, like the Florida scheme, is a hybrid procedure that requires the determination of an additional fact—"substantial and compelling reasons"—before imposition of a sentence above the standard range.

The State responds that "substantial and compelling reasons" is not a question of fact to be put to a jury, and therefore, it was not required to prove it as an element beyond a reasonable doubt. The State further argues that an aggravating factor found by the trier of fact is sufficient to support the "substantial and compelling" legal conclusion and that *Blakely* does not require this legal conclusion be tried to a jury. We agree with the State.

This court previously rejected Parrill's argument in *State v. Sage*, 1 Wn. App. 2d, 685, 407 P.3d 359 (2017). The defendant in *Sage* argued that the trial court engaged in fact finding, in violation of his Sixth Amendment right to a jury trial, by entering an exceptional sentence. *Id.* at 707. This court disagreed. *Id.* at 710. *Sage* relied on *State v. Suleiman*, 158 Wn.2d 280, 290-91, 291 n.3, 143 P.3d 795 (2006), which expressly concluded that whether the facts alleged and found were sufficiently substantial and compelling to warrant an exceptional sentence is a legal conclusion left for the judge to determine.

Additionally, *Hurst* is inapposite. In that case, Florida's sentencing scheme for a defendant convicted of a capital felony required the sentencing court to conduct a subsequent evidentiary hearing before a jury. 577 U.S. at 95. The jury provided a recommendation of a life or death sentence without stating the factual basis of its recommendation. *Id.* at 95-96. Although the trial court would consider the jury's recommendation, the court exercised independent judgment to determine factually whether a death sentence was justified. *Id.* at 96. The Supreme Court held that Florida's capital punishment sentencing *scheme violated the Sixth Amendment because it*

*directed the trial court to engage in fact finding to determine whether there were sufficient aggravating circumstances in support of a death sentence.* *Id.* at 98-99 (emphasis added). That is not the case in Washington. Instead, a jury, not a judge, determines the existence or non-existence of aggravating factor(s) under a "beyond a reasonable doubt" standard. Our Supreme Court expressly concluded in *Suleiman* that the subsequent "substantial and compelling reasons" determination in the Washington SRA is a legal conclusion—not a fact—made by the judge. 158 Wn.2d at 290-91. Consequently, *Hurst* is inapplicable. Even if it was decided after *Suleiman*, its reasoning does not undermine *Suleiman*, which remains controlling.

Until our Supreme Court reverses its prior holding that the "substantial and compelling reasons" requirement from our SRA is a legal conclusion, we will not ignore precedent.

B. An Indeterminate Life Sentence Does Not Bar the Imposition of An Exceptional Minimum Term Sentence Under the SRA.

1. Legal Principles

Next, Parrill argues the fact that he "is already serving an indeterminate life sentence shows that, considering the purposes of the SRA, no substantial and compelling reasons exist to impose a 60-year minimum sentence." Br. of Appellant at 29. He adds that the imposition of the exceptional minimum term sentence does not further the goal of protecting the public, reducing the risk of re-offending, or making frugal use of governmental resources. Lastly, Parrill argues that the length of the indeterminate sentence imposed (i.e. life) already promotes "commensurate and 'just'" punishment as the penalty is proportionate to the offense and his criminal history. *Id.* at 30. We disagree.

2.    Analysis

Notably, this court previously rejected this exact argument in the unpublished decision of *State v. Hurley*, No. 55396-1-II (Wash. Ct. App. Nov. 1, 2022) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2055396-1-II%20Unpublished%20Opinion.pdf. The court in *Hurley* relied on the plain language of RCW 9.94A.507 and 9.94A.535. Slip op. at 8. We adopt *Hurley's* reasoning.

As the *Hurley* court explained, those convicted of child molestation in the first degree are sentenced under the provisions outlined in RCW 9.94A.507. *Id.* In *Hurley's* case, specifically, subsection (3)(c)(i). *Id.* Similarly, offenders convicted of rape in the second degree, and who are subject to an aggravating factor finding that the victim was under the age of 15 at the time of the offense, are also sentenced under RCW 9.94A.507, specifically subsection (3)(c)(ii). Just like in *Hurley,* under RCW 9.94A.507(3)(c)(ii), the court must impose a minimum term and a maximum term—which is exactly what it did here. Accordingly, we conclude that an indeterminate life sentence does not bar the imposition of an exceptional minimum sentence pursuant to RCW 9.94A.507.

III.    VICTIM PENALTY ASSESSMENT AND DNA FEE

Parrill argues that the VPA and DNA fees should be stricken because the trial court determined he was indigent at the time of sentencing and the recent statutory amendments require it so. The State does not object, noting that under the current version of RCW 7.68.035 the fee must be waived if the defendant makes a motion.

Recent legislative changes eliminated the DNA collection fee unless the defendant's DNA was previously collected as a result of a prior conviction. LAWS OF 2023, ch. 449, § 4.

Similarly, RCW 7.68.035(1) that imposes a victim penalty assessment fee "for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor," was also amended, allowing waiver of the fee if the superior court finds that "the defendant, at the time of sentencing" was indigent. LAWS OF 2023, ch. 449, § 1.

Here, the record shows that the trial court found Parrill indigent at sentencing. Accordingly, we remand with instructions to strike the DNA collection fee and VPA in light of the recent statutory changes. RCW 43.43.7541(2); RCW 7.68.035(4)-(5)(b).

## CONCLUSION

We conclude that Parrill waived his right to a jury trial regarding the aggravating factors. We also conclude that the trial court's imposition of an exceptional sentence was without error. Accordingly, we affirm the convictions. However, we remand with instructions to strike the VPA and DNA fees in light of statutory amendments and the State's lack of objection.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Glasgow, J.

_____
Price, J.

13